# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1006

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Lynn Tran DeRosier, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 15, 2007
Filed: September 13, 2007

_____

Before BYE and SMITH, Circuit Judges, and NANGLE,[1] District Judge.

_____

NANGLE, District Judge.

After a jury trial, Defendant-Appellant Lynn Tran DeRosier was convicted of three counts of wire fraud affecting a financial institution in violation of 18 U.S.C. § 1343.[2] Appellant DeRosier's conviction stems from borrowing money under false

_____

[1] The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2] 18 U.S.C. § 1343 provides, in pertinent:

>    Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property

pretenses from acquaintances she came to be familiar with through her job at TierOne Bank in Red Oak, Iowa. At sentencing, the district court[3] imposed an eight-level enhancement for the loss amount being greater than $70,000, but less than $120,000, and sentenced Defendant DeRosier to fifteen months of imprisonment, with each count to be served concurrently. The court further ordered Appellant to pay $79,353.42 in restitution, which included the losses stemming from borrowing money from the victims, half of the employee costs incurred by TierOne Bank, and the attorney fees for the attorneys in Iowa.[4]

Lynn Tran DeRosier appeals her conviction, sentence, and the amount of restitution ordered, raising four points of error. Appellant alleges the court erred in: (1) denying her proposed jury instruction on "intent to defraud"; (2) determining the loss amount and restitution at sentencing; and, (3) denying her motion to strike surplusage from the indictment. Lastly, Appellant contends that her conviction violates Apprendi v. New Jersey, 530 U.S. 466 (2000). We affirm.

---

by means of false or fraudulent pretenses, representations, or promises . . . shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

[3] The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

[4] The court ordered restitution in the amount of $42,249.65 to TierOne Bank; $15,000 to Vera Bullington; $2,500 to Ronald Ballinger; and $19,603.77 to Jack Tudor.

# I. BACKGROUND

Appellant was a gambling addict. She solicited personal loans from people she knew, some of whom she became familiar with because they were customers of her employer, TierOne Bank. DeRosier did not solicit the loans on the premises of the bank, imply that the bank approved the loans, or take any money from the bank unlawfully. Instead, DeRosier contacted these acquaintances at home, explaining to them that she needed to borrow money to help her family. In return for the loan, DeRosier agreed to pay back the loans with interest within short periods of time, and she formalized the agreements by handwriting loan contracts.

DeRosier did not use the borrowed money for the purposes she claimed to her creditors. Rather, DeRosier gambled the money away, intending to win at the casino and use the proceeds toward paying back her loans. In sum, DeRosier borrowed money from acquaintances so she could support her gambling habit. While Appellant may have intended to abide by her promise to repay her victims, she planned to fund these payments with winnings from the casino, a plan which, true to odds, never came to fruition.

When TierOne was alerted to DeRosier's suspicious activity, it initiated an investigation. TierOne decided to voluntarily give back some money to a few of its customers who made loans to DeRosier. TierOne then pursued a civil judgment against DeRosier in California to recoup the amounts refunded to her creditors. DeRosier agreed to settle the claim in the amount of $25,123.88.

Thereafter, on August 23, 2005, DeRosier was criminally charged with a number of counts arising out of her fraudulent borrowing practices. The indictment was amended twice, and the second superseding indictment was returned on May 9, 2006. DeRosier pled not guilty to each charge, and the case went to trial. Ultimately, at trial the government only pursued four of the five counts in the indictment—at the government's request Count 4, misapplication of bank funds, was dismissed. At trial,

an expert, Dr. Suzanne Pike, testified for the defense, diagnosing DeRosier as suffering from a pathological gambling disorder.

The defense made a few objections at trial that are now on appeal. First, the defense challenged the language in the indictment, arguing that the use of the phrase "in reckless disregard of the interests" instead of "with intent to defraud" in the indictment was surplusage. Appellant's objection was overruled. Before the case was submitted to the jury, DeRosier submitted a proposed jury instruction on the issue of intent. The proposed instruction explained DeRosier's theory of defense–that if DeRosier intended to pay back her creditors, then she could not be found to have the requisite intent necessary to commit the crime. The court denied the proposed instruction, and instead gave its own instruction.

After a two-day trial, the jury returned a verdict of guilty as to the three counts of wire fraud affecting a financial institution, and a verdict of not guilty on the charge of false entry of bank records. At sentencing, DeRosier objected to the government's calculation of loss and restitution, and for the first time raised the issue that the wire fraud jury instructions omitted the element "affecting a financial institution." At the conclusion of the hearing, the district court sentenced DeRosier to fifteen months of imprisonment, with each count to be served concurrently. The court further ordered Appellant to pay $79,353.42 in restitution.

## II. DISCUSSION

### A. Jury Instruction

Appellant alleges that the trial court committed reversible error in its instructions to the jury regarding the definition of "intent." We review jury instructions for abuse of discretion, and "[i]n so doing, we do not consider portions of a jury instruction in isolation, but rather consider the instructions as a whole to

determine if they fairly and adequately reflect the law applicable to the case." <u>United States v. Turner</u>, 189 F.3d 712, 721 (8th Cir. 1999).

Appellant concedes that she did not ask for the stock instruction on good faith, which is a complete defense to charges requiring fraudulent intent. <u>See</u> <u>United States v. Casperson</u>, 773 F.2d 216, 222 (8th Cir. 1985); <u>United States v. Ammons</u>, 464 F.2d 414 (8th Cir. 1972).[5] Rather, DeRosier submitted a proposed jury instruction that set forth her theory of defense and definition of intent to defraud. Specifically, the proposed jury instruction read:

> The government has alleged that the defendant intended to defraud her personal creditors. Because intent to defraud is an element of the wire fraud offenses in counts I, II, and III, the government must prove it beyond a reasonable doubt for each count. The defendant has asserted that she did not intend to defraud her creditors because she intended to pay them back the money she borrowed with interest after she won money at the casino. At the time she borrowed the money, the defendant asserts that she was suffering from a mental disorder called pathological gambling which caused her to believe she would eventually win back the money she owed and be able to pay her debts. If you find that [defendant] intended to pay back her creditors and did not intend to defraud them, you must find her not guilty of Counts I, II and III.

---

[5] In light of the language of the good faith instruction, it is apparent why Defendant did not seek such an instruction: "Good faith constitutes a complete defense to one charged with an offense of which fraudulent intent is an essential element. One who acts with honest intention is not chargeable with fraudulent intent. One who expresses an opinion honestly held by him, or a belief honestly entertained by him, is not chargeable with fraudulent intent even though such opinion is erroneous and such belief is a mistaken belief. Evidence which establishes only that a person made a mistake in judgment or an error in management, or was careless, does not establish fraudulent intent." <u>Ammons</u>, 464 F.2d at 417.

The court rejected the proposed instruction, and instructed the jury as follows:

> One of the issues in this case is whether the defendant suffered from a mental disorder called pathological gambling disorder at the time the acts charged in the indictment were committed. Being under the influence of a mental disorder can provide a legal excuse for the commission of a crime only if the effect of the mental disorder makes it impossible for the defendant to have formed the intent to defraud . . . Evidence that the defendant acted while under the influence of the pathological gambling disorder may be considered by you, together with all the other evidence, in determining whether or not she did in fact have the intent to defraud customers of the bank or the bank.

Final Jury Instructions, Instruction No. 21. The court's instruction did not include a discussion of Appellant's intention to repay the loans. Appellant asserts that by failing to include DeRosier's theory of defense the court committed prejudicial error requiring reversal of her conviction because the intent to repay negates the intent to defraud. We disagree.

This Circuit has held that defendants are entitled to a theory of defense instruction at trial "if a timely request is made, the evidence supports the proffered instruction and the instruction correctly states the law." United States v. Casperson, 773 F.2d 216, 223 (8th Cir. 1985). However, as a corollary to the rule, defendants are "not entitled to a particularly worded instruction when the instructions actually given by the trial court adequately and correctly cover the substance of the requested instruction." Id.

Relying on United States v. Parsons, 646 F.2d 1275 (8th Cir. 1981), Appellant contends that her case merited an instruction explaining to the jury that if Appellant had the intent to repay her loans, then she did not have the requisite intent to defraud. We find that the district court properly rejected Appellant's proffered instruction because, under the circumstances of this case, such an instruction is not supported by our case law. Appellant misapplies the proposition for which Parsons stands.

In <u>Parsons</u>, the defendant was a credit union treasurer involved in a quasi-money laundering scheme whereby he would pay a small fee to someone who would apply for a loan from the credit union and turn over the loan proceeds to defendant. <u>Id.</u> at 1276-77. In all but two of the sham loan transactions, defendant was the one who received the proceeds of the loan. <u>Id.</u> at 1280. With respect to the two loan transactions where the defendant was not the ultimate recipient of the money, we approved of an instruction that explained in order to find the defendant guilty of bank fraud, the government must prove beyond a reasonable doubt that the debtors of the loan did not have the ability or intent to pay back the loan. <u>Id.</u> at 1279-80. We approved of this instruction in a limited circumstance, only when the loan proceeds were received by someone other than the defendant. <u>Id.</u> In the instant situation, every loan transaction was for DeRosier's benefit, no one other than DeRosier received the loan proceeds, therefore <u>Parsons</u> is distinguishable and inapplicable to the case at bar.

In <u>Casperson</u>, we reversed defendant's conviction and remanded for a new trial when the district court failed to charge the jury with a good faith and theory of defense instruction. <u>Casperson</u>, 773 F.2d at 222. In <u>Casperson</u>, the proposed theory of defense instruction was an accurate statement of the law–if the defendant made representations that he thought to be true, then he cannot be found to have the requisite intent to defraud. <u>Id.</u> at 222-24. Unlike <u>Casperson</u>, in this case, DeRosier made representations that she knew to be false so she could fund her gambling addiction. Her theory of defense was that at all times she had the intention to repay the loans. We have found no Eighth Circuit case law that supports Appellant's contention that having the intent to repay a loan negates the intent to defraud when the loans are acquired through false representations and the defendant is the recipient of the loan proceeds. Therefore, we find the district court properly refused DeRosier's proposed instruction because it did not contain a proper statement of the law. <u>See</u> <u>United States v. McQuarry</u>, 726 F.2d 401 (8th Cir. 1984) (affirming the district court's rejection of the proposed instruction because the instruction was unsupported by case law).

-7-

## B. Loss Amount

Appellant argues that the district court erred in calculating the amount of loss and restitution.[6] The district court ordered an eight-level enhancement for the loss amount being greater than $70,000 but less than $120,000–the court determined the loss was $79,353.42. We review findings of facts underlying its calculation of the guidelines for clear error. United States v. Scott, 448 F.3d 1040, 1043 (8th Cir. 2006). We conduct a de novo review of the district court's application of the guidelines to the facts. Id. at 1043.

Appellant alleges four points of error in calculating loss: (1) the amount for TierOne's attorney fees, legal fees, and other employee costs related to the investigation of DeRosier were inappropriately included;[7] (2) Jane Peterson's waiver of bank loan fees in the amount of $623.88 are not substantially related to the counts in the indictment, and the fees constitute lost profits, not true loss;[8] (3) the $19,100.00 loan from Jack Tudor should not have been considered because no evidence was presented

---

[6] DeRosier appeals both the loss amount and restitution orders, but because the two numbers are identical, she consolidates her argument on appeal.

[7] The district court ordered the loss amount and restitution to TierOne Bank in the amount of $42,249.65. This amount included the fees in dispute–$14,947.00 in attorneys' fees and $12,115.12 in employee investigative costs. TierOne hired attorneys from California and Des Moines to pursue the civil lawsuit against DeRosier. The court allowed the Des Moines legal fees to be included in its calculation because most of these fees were incurred in connection with the bank's investigation of DeRosier. Similarly, the court allowed one-half of the requested employee costs that were incurred from investigating DeRosier.

[8] Appellant also argues that Jane Peterson's waiver of bank loan fees in the amount of $623.88 should not be included in the loss calculation. The bank experienced a loss of $623.88 in loan processing fees because it reimbursed Jane Peterson who had taken out the loan pursuant to DeRosier's solicitation. This amount alone, or in conjunction with the other loss amounts, does not alter the range of loss, therefore we find this argument is moot.

on this loan, and it was not substantially connected to DeRosier's convicted conduct;[9] and, (4) the $10,000 loss amount related to the dismissed Vera Bullington charge should be excluded.

Critical to the calculation of Appellant's sentence in this case is the calculation of loss. See U.S.S.G §2B1.1. We recognize that "[t]he district court need make only a reasonable estimate of the loss, and we accord particular deference to the loss determination because of the district court's unique ability to assess the evidence and estimate the loss." Scott, 448 F.3d at 1044.

Appellant argues that she should not be accountable for the bank's legal and employee fees associated with the investigation of her conduct because they are consequential and U.S.S.G § 2B1.1 specifically prohibits their inclusion in the calculation of loss.[10] Consequential damages are defined as losses that do not flow directly and immediately from an injurious act, but that result indirectly from the act. Black's Law Dictionary 394 (7th ed. 1990).

We find that the costs incurred by the bank for investigating DeRosier are not consequential because the investigation was in immediate response to DeRosier's fraudulent conduct. DeRosier was an employee of the bank and her loans were obtained from those she knew through the bank—it was reasonable and foreseeable that TierOne's internal audit team would investigate one of their employees who was involved in acquiring loans from bank customers. See United States v. Piggie, 303 F.3d

---

[9] Appellant also appeals the inclusion of Jack Tudor's attorneys fees in the amount of $503.77 because such costs are indirectly related to the convicted conduct. This amount alone, or in conjunction with the other loss amount, does not alter the range of loss, therefore we find this argument is moot.

[10] In calculating loss in cases of fraud, Section 2B1.1, Application Note 3(D) provides for certain exclusions from loss: "(ii) Costs to the government of, and costs incurred by victims primarily to aid the government in, the prosecution and criminal investigation of an offense" are excluded.

923 (8th Cir. 2002) (holding the actions of the defendant and his fraudulent scheme caused the actual losses, which included costly investigative fees, and thus were appropriately included in calculating loss).

TierOne's investigation was prompted prior to any criminal charges being brought against DeRosier, and, therefore, these costs were not incurred to primarily aid the government, rather, the investigation was prompted for the bank's own benefit.[11]  On March 15, 2002, three days after DeRosier resigned from the Bank and left town, TierOne began to receive complaints from its customers about DeRosier.  The bank's "in-house" Nebraska attorneys, Woods Aitken, assisted TierOne in its investigation of DeRosier's activities.  This included helping TierOne review and collect documents, prepare affidavit statements from some of the victims, and prepare other related legal documents.  Notably, at sentencing, DeRosier's counsel recognized that the inclusion of attorneys' fees is not banned under our case law.  (Sentencing Tr. 29.)

Second, Appellant contends that Mr. Tudor's loan was not specifically detailed in the indictment and not proven at trial, and thus those amounts should be excluded from the loss calculation.  However, we take a broad view of what conduct and related loss amounts can be included in calculating loss.  United States v. Berendt, 86 F.3d 803, 811 (8th Cir. 1996) (holding that if the "offense of conviction is mail fraud, the resulting loss from a related conspiracy may be included in the calculation if it involves the same course of conduct or common scheme or plan") (citation omitted).  In this case, Mr. Tudor submitted a victim impact statement for the losses he suffered after making a loan to DeRosier, and DeRosier does not contest that she did indeed borrow money from Mr. Tudor.  Mr. Tudor also submitted a copy of the handwritten loan contract signed by DeRosier, similar to the loan contracts entered into with other victims.  Therefore, we

---

[11]  We realize that TierOne had a responsibility as a financial institution to report suspicious activity to law enforcement, and as such provided the results of its own internal investigation to the FBI.  However, to reiterate, TierOne's investigation was motivated by its own business interests, and its investigation commenced well before an indictment was brought against DeRosier.

find the district court did not commit clear error in finding that Mr. Tudor's loan was part of DeRosier's scheme. Finally, DeRosier argues that the $10,000 loss amount related to the dismissed Vera Bullington count should be excluded. However, we have held that courts may consider conduct in dismissed counts in calculating loss. Id.

For the reasons stated above, we affirm the district court's calculation of loss.

## C. **Restitution**

We review the decision to order restitution for an abuse of discretion. United States v. Pierce, 479 F.3d 546, 553 (8th Cir. 2007). The district court's factual determinations underlying an order for restitution are reviewed for clear error. United States v. Oslund, 453 F.3d 1048, 1062 (8th Cir. 2006). The burden is on the government to prove the amount of restitution based on a preponderance of the evidence. Id.[12] To satisfy the preponderance of the evidence standard "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." In re Winship, 397 U.S. 358, 371(1970) (citation omitted).

Appellant contends that the district court erred in ordering restitution for the identical reasons it allegedly erred in calculating the loss amount, and Appellant makes no new arguments with respect to the order of restitution. DeRosier contends that restitution cannot include damages such as attorneys' fees or TierOne's employee costs, or the waiver of bank loan fees for a customer who was a victim of DeRosier's fraud.

---

[12] We have determined that the evidentiary standard in restitution cases is unchanged by United States v. Booker, 543 U.S. 220 (2005). United States v. Miller, 419 F.3d 791, 792 (8th Cir. 2005).

-11-

The order of restitution is governed by the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A(a)(1).[13] Restitution may only be awarded "for the loss caused by the specific conduct that is the basis of the offense of the conviction." Hughey v. United States, 495 U.S. 411, 413 (1990).

The attorneys' fees, the employee costs of investigating DeRosier's conduct, and the waiver of the bank fees all stem from DeRosier's fraudulent conduct for which DeRosier was found guilty. See United States v. Akbani, 151 F.3d 774, 780 (8th Cir. 1998) (holding that according to the Victim and Witness Protection Act, there is is no blanket prohibition on the inclusion of attorneys' fees in restitution awards for offenses that do not result in damage to or the loss of property). Our case law has specifically approved of the inclusion of attorney's fees and investigative costs in a restitution award when these losses were caused by the fraudulent conduct. Id.; United States v. Piggie, 303 F.3d 923, 928 (8th Cir. 2002) (affirming the court's inclusion of investigative costs in a restitution award because these losses were incurred as a result of "the specific conduct that is the basis for the offense").

With respect to Appellant's claim that the loans from Jack Tudor and Vera Bullington were incorrectly included in determining restitution, we find the district court did not err. This Circuit has held that "[t]he district court has wide discretion in ordering restitution." United States v. Ross, 210 F.3d 916, 924 (8th Cir. 2000); United States v. Manzer, 69 F.3d 222, 229 (8th Cir. 1995). We have consistently held that restitution may be ordered for criminal conduct that is part of a broad scheme to defraud, even if the defendant is not convicted for each fraudulent act in the scheme. United States v. Ross, 210 F.3d 916 (8th Cir. 2000). "So long as the indictment details a broad scheme encompassing transactions beyond those alleged in the counts of conviction, the district court may order restitution to victims who suffered from defendant's criminal

---

[13] Section 3663A(a)(1) requires that a court order restitution when a defendant has been convicted of an offense against property, including an offense committed by fraud or deceit. 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii).

activity beyond what was described with particularity in the indictment." United States v. Liner, 435 F.3d 920, 926 (8th Cir. 2006). We affirm the district court's restitution award because the indictment alleged a broad scheme that involved several TierOne customers who suffered as a result of Appellant's fraudulent conduct.

**D.  Motion to Strike Surplusage**

Appellant contends that the trial court erred when it denied Appellant's motion to strike surplusage in the indictment. See Fed. R. Crim. P. 7(d).[14]  In each count of wire fraud, instead of including the phrase, "with intent to defraud," the indictment read, "in reckless disregard of the interests of." DeRosier argues that the inclusion of the phrase "in reckless disregard of the interests of" was prejudicial and did not reflect an accurate statement of the law. We find Appellant's argument unavailing.[15]

A motion to strike surplusage from an indictment is a matter within the court's discretion. United States v. Figueroa, 900 F.2d 1211, 1218 (8th Cir. 1990). This Court has cautioned that such a motion "should be granted only where it is clear from the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter." Dranow v. United States, 307 F.2d 545, 558 (8th Cir. 1962).

We find that the district court did not abuse its discretion in denying Appellant's motion. In United States v. Willis, 87 F.3d 1004 (8th Cir. 1996), we approved of a jury

---

[14] Rule 7(d) provides: "Upon the defendant's motion, the court may strike surplusage from the indictment or information."

[15] Appellant cites to no law in support of her contention that the phraseology in the indictment is not an accurate statement of the law.

instruction[16] which explained that the jury may find that the defendant possessed the requisite intent to defraud if the defendant acted in reckless disregard of the interests of the bank. Id. at 1007 (stating that "[a] majority of circuits that have addressed the question whether reckless disregard of the interests of the bank is sufficient to prove intent to defraud have answered in the affirmative"). Likewise, we find that the district court did not commit reversible error when it did not strike the language in the indictment that described DeRosier as acting "in reckless disregard of the interests of " in lieu of stating that DeRosier had the intent to defraud her creditors. Because the "reckless disregard" standard is an acceptable specification of the term "intent to defraud", the language does not constitute surplusage. We affirm the district court's ruling.

## E. Apprendi

Finally, Appellant asserts that her sentence violates <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) because she was found guilty on three counts of wire fraud affecting a financial institution, yet the jury instructions only included the elements of basic wire fraud and did not include the elements that would constitute "affecting a financial institution."[17] <u>Apprendi</u> claims which have been raised at the district court level are reviewed de novo. <u>United States v. Ross</u>, 279 F.3d 600, 608 (8th Cir. 2002).

Appellant admits that each relevant jury instruction included the header "Wire Fraud Affecting A Financial Institution." She further concedes that her own proposed

---

[16] The instruction stated, in part, that a "[r]eckless disregard of the interests of the bank is equivalent of intent to defraud." Id. at 1007.

[17] In <u>Apprendi</u>, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury." <u>Apprendi</u>, 530 U.S. at 489 (citing <u>Jones v. United States</u>, 526 U.S. 227 (1999)).

jury instructions did not include the element "affecting a financial institution."  She also recognizes that she did not object to the jury instructions as given at trial before the jury retired to deliberate, and raised this issue for the first time in her sentencing memorandum.[18]  Because DeRosier failed to timely object to the instructions at trial, we review the jury instructions for plain error.[19]  Jones v. United States, 527 U.S. 373, 388 (1999) (failure to object to jury instructions before jury retired rendered objection untimely and subject to plain error review).  See also Federal R. Crim. P. 30(d).[20]  In order for a plain error to be reversible, the error must have affected DeRosier's substantial rights.  United States v. Barth, 424 F.3d 752, 764 (8th Cir. 2005); See also United States v. Pinque, 234 F.3d 374, 377 (8th Cir. 2000).  We find that Appellant has failed to establish the error affected her substantial rights.

---

[18] The government contends that DeRosier waived her right to raise this issue on appeal because at trial she proposed a similar instruction to which she now objects. The Government notes that DeRosier objects to the final jury instructions because the wire fraud instructions omitted the element "affecting a financial institution." However, DeRosier's own proposed jury instructions, likewise, failed to include the "affecting a financial instruction" element of the crime.  We find that because it is readily apparent that Appellant's claim fails under the plain error standard, we dispose of her challenge pursuant to the plain error doctrine, and decline to delve into the nuances of whether DeRosier waived her objection or forfeited it.

[19] Fed. R. Crim. P. 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." The standard of review for plain error requires "that (1) there was an error; (2) the error was plain; and (3) that error affected substantial rights."  United States v. Barth, 424 F.3d 752, 764 (8th Cir. 2005).  Further, the Court of Appeals should correct the plain error "affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"  United States v. Olano, 507 U.S. 725, 736 (1993) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).

[20] Federal R. Crim. P. 30(d) provides, in relevant part: "A party who objects to any portion of the instructions . . . must inform the court of the specific objection and the grounds for the objections before the jury retires to deliberate . . .Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)."

Critically, DeRosier bears the burden of persuasion with respect to proving her rights were prejudiced, and this requirement is normally met by showing that the alleged error affected the case's outcome. United States v. Rice, 449 F.3d 887, 894 (8th Cir. 2006). We are unpersuaded that the district court committed plain error requiring the Court to vacate DeRosier's sentence. First, it was uncontroverted at trial that the bank was a financial institution that was "affected" by Appellant's fraudulent conduct. DeRosier came into contact with the victims through her position at the bank, in fact, DeRosier stipulated to the fact that she had "received the funds from customers of TierOne Bank," (Trial Tr., 123-25), and as a result of her scheme, the bank not only expended time and money to investigate the loans and Appellant's conduct, but it also lost good will in the community. It was not truly disputed whether DeRosier's criminal actions affected TierOne Bank. See United States v. Rice, 449 F.3d 887, 896 (8th Cir. 2006) (holding that the evidence of defendant's guilt was overwhelming, thus "the failure to separately define 'intent to defraud' cannot be said to have affected his substantial rights"). Moreover, looking at the jury instructions as a whole, Final Jury Instruction No. 9 explained DeRosier's alleged scheme, stating that TierOne Bank constituted a financial institution as defined by 18 U.S.C § 20, and that DeRosier solicited the loans from bank customers. (Final Jury Instr. No. 9.) In light of DeRosier's own stipulations, the evidence at trial, and taking into account the jury instructions as a whole, we find that no reasonable fact-finder would have found that DeRosier's conduct did not "affect" TierOne Bank.

Furthermore, the court did not sentence DeRosier to a higher sentence than authorized by the lesser-included offense of wire fraud; DeRosier's sentence of fifteen months of imprisonment does not come close to the statutory maximum for the lesser-included offense of wire fraud. DeRosier concedes that the effect of this error will only come to fruition in the unlikely event she violates her supervised release.[21] Therefore,

---

[21] The offense of wire fraud affecting a financial institution is a Class B felony, whereas the offense of wire fraud is a Class C felony. See 18 U.S.C. § 1343; 18 U.S.C. §§ 3559(a)(2), (3). Based on these classifications, if DeRosier violates her

by Appellant's own admission, this error may never impact her period of incarceration, and revocation of her supervised release is a possibility that Appellant contends will unlikely occur.  Accordingly,  we find that any error in the jury instructions does not meet the plain error standard and does not seriously affect the fairness, integrity or public reputation of the judicial proceedings.  See United States v. Cotton, 535 U.S. 625, 633-34 (2002) (holding that Apprendi errors may not be addressed unless the forfeited claim is sufficiently serious to affect the fairness, integrity, or public reputation of the judicial proceedings).  We affirm Appellant's sentence.

The judgment is affirmed.

_____

supervised release, then she can be required to serve up to three years in prison on that revocation because she was found guilty of a Class B felony.  However, if she was sentenced based on the lesser included offense of wire fraud, she would only be required to serve up to two years for having violated her supervised release.