# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-2621

_____

United States of America

*Plaintiff - Appellee*

v.

James Bolt

*Defendant - Appellant*

_____

No. 14-2623

_____

United States of America

*Plaintiff - Appellee*

v.

James Bolt

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: January 12, 2015
Filed: April 3, 2015

_____

Before LOKEN, MURPHY, and MELLOY, Circuit Judges.
_____

MURPHY, Circuit Judge.

James Bolt pled guilty to mail fraud, wire fraud, and money laundering after identifying and claiming large amounts of unclaimed property held by the state of California. The district court[1] sentenced Bolt to 100 months after applying an enhancement for the use of sophisticated means and concluding that an upward departure was warranted based on the inadequacy of his criminal history category under the guidelines. Bolt appeals, and we affirm.

In August 2012 FBI agents began an investigation into various frauds committed by Bolt. The state of California posts information about unclaimed property on a public website, and Bolt made claims in 2011 and 2012 on unclaimed property in the state's custody. The claims were made in the name of Situs Cancer Research Center (Situs), a company which Bolt controlled.

Bolt was involved in four fraudulent schemes in the state of California. In each scheme Bolt created fraudulent donation agreements which purported to transfer the unclaimed assets from their lawful owners to Situs. In some instances Bolt created fictitious employees of the companies and signed their names; in others he forged the signatures of actual people. He also fabricated notary stamps and signed the agreements in the names of two different notaries: "T. Dashwood," an actual notary public whose notary term had expired years earlier, and "Mary J. Marquez." Subsequent investigation revealed no record of a Mary Marquez as a California notary, and the fact that the notary number Bolt attributed to Marquez had been issued

_____

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

-2-

to another notary who never activated it. Bolt used interstate mail and wire systems to transmit the fraudulent documents to California. After receiving the fraudulent documents, the state transferred the unclaimed assets to Situs. These funds totaled approximately $2,400,000. Bolt later made purchases of cars and real estate with funds from the Situs bank account.

In another scheme, Situs acquired unclaimed funds from a trust account held by the state of Nevada which contained a woman's life savings. That was accomplished by a fraudulent donation document which transferred the trust over to Situs; the documents were signed on behalf of Situs by its purported chief financial officer "Leah Cleveland." Subsequent investigations were unable to locate Leah Cleveland or otherwise confirm her existence. The fraudulent donation agreement was notarized by "Barbara Smith," a real notary public in the state of Arkansas, who later stated to authorities that she had not signed or notarized the document and does not own the notary stamp used. Situs received $108,251.78 from his Nevada scheme.

Bolt was charged and pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343, one count of mail fraud in violation of 18 U.S.C. § 1341, and one count of money laundering in violation of 18 U.S.C. § 1957. In the plea agreement the government agreed to recommend a sentence within the guideline range determined by the district court. The parties did not agree on whether the loss amount exceeded $2.5 million.

A presentence report (PSR) was prepared, which calculated an offense level of 25. This level was based on a loss amount exceeding $2.5 million, including the loss amounts from the four California frauds to which he had pled guilty and that from the uncharged Nevada fraud scheme. The PSR also included a two level enhancement for the use of sophisticated means and calculated a criminal history category of I due to the time elapsed after Bolt's numerous prior convictions. These included 1982 convictions for mail fraud and making false statements in a loan application, 1984

convictions for multiple counts of mail fraud and making false statements, and a 1992 conviction for theft by deception. The PSR also pointed out that Bolt had returned to prison for a parole violation and had been arrested between 1973 and 2006 on a variety of charges including wire fraud, impersonating a police officer, mail fraud, uttering bogus checks, and passing a forged instrument.

After reviewing the PSR, the district court notified the parties prior to sentencing that it would consider whether an upward departure under the sentencing guidelines would be appropriate in Bolt's case. The court cited Bolt's "extraordinarily lengthy criminal history, going back more than 40 years" and observed that his multiple convictions did not count towards the criminal history guideline calculation because they were imposed over 15 years earlier. Bolt was "highly likely to recidivate," given that he had not been deterred by previous arrests and imprisonment.

On June 24, 2014 the district court sentenced Bolt to 100 months. It found by a preponderance of the evidence that the loss amount from his conduct exceeded $2.5 million based on his Nevada scheme using the fictional identity of Leah Cleveland. Noting that the various schemes were difficult to follow, in part because Bolt had created various corporate aliases for Situs, the district court applied a two level increase for using sophisticated means under U.S.S.G. § 2B1.1(b)(10)(C). The district court also determined that an upward departure was warranted under § 4A1.3, based on the inadequacy of his criminal history category in light of his offenses. With a newly calculated criminal history category of V, his resulting guideline range was 100 to 125 months.

Bolt now appeals his sentence, raising three issues. First, he contends that the loss amount was improperly calculated. He claims that the losses from his Nevada scheme should not have been included. A district court calculates a loss amount based on the preponderance of the evidence, and we review that calculation for clear error. United States v. Boesen, 541 F.3d 838, 850 (8th Cir. 2008). Under the sentencing

guidelines, relevant conduct may be considered including acts and omissions that "were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Factors to use in determining whether any activity is part of the same "course of conduct" include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." Id. at § 1B1.3, comment. (n.9(B)).

We conclude the district court did not clearly err in holding Bolt responsible for the losses associated with his Nevada scheme which followed the same pattern as in the California offenses to which Bolt pled guilty. All involved the transfer of unclaimed property held by the state by means of a falsified donation agreement with a forged notary signature. The funds were transferred to the same Situs bank account. The sole difference is that some of the documents were signed on behalf of Situs by a "Leah Cleveland" rather than by Bolt; the district court made a finding that Cleveland was only a fabricated name. The losses were correctly calculated.

Bolt also challenges the two point enhancement under U.S.S.G. § 2B1.1(b)(10) for the use of sophisticated means. That enhancement is applied for "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." Id. at § 2B1.1, comment. (n.9(B)). We review de novo the district court's application of the guidelines to the facts. United States v. Hance, 501 F.3d 900, 909 (8th Cir. 2007). Bolt argues his offense was not particularly complex as he did not conceal his involvement in the schemes. He claims he merely committed a garden variety mail fraud for which the enhancement does not apply. See id. at 909–10.

We conclude that the district court did not err in applying the sophisticated means sentencing enhancement. In carrying out these frauds, Bolt prepared numerous fraudulent donation agreements. For the different frauds he signed on behalf of many distinct identities—some of whom were fictional and some of whom were names of

actual employees. Bolt also created false notary stamps using the names of three different notaries; two of these were actual notaries. The third involved a numbered notary identification which Bolt had discovered and adopted. While Bolt argues he did not have enough sophistication to conceal his own involvement in the schemes, he did create a fictional employee to sign on behalf of Situs as part of his Nevada scheme. Finally, Bolt concealed the scheme by creating different aliases for Situs, thereby distinguishing one fraudulent scheme from another.

Bolt objects to the district court's decision to depart upwards based on the inadequacy of his criminal history category. The guidelines permit an upward departure when reliable information indicates that the calculated criminal history category substantially underrepresents the seriousness of a defendant's criminal history. U.S.S.G. § 4A1.3(a)(1). We review the district court's decision to depart under this section for abuse of discretion. United States v. Jones, 596 F.3d 881, 883 (8th Cir. 2010). The type of reliable information relevant in considering such a departure includes prior sentences not used in computing the criminal history category, § 4A1.3(a)(2)(A), prior sentences of substantially more than one year resulting from "independent crimes committed on different occasions," § 4A1.3(a)(2)(B), as well as prior similar adult criminal acts which did not result in a conviction, § 4A1.3(a)(2)(E).

We conclude that the district court did not abuse its discretion in departing upwards. As the court noted, Bolt had multiple convictions and arrests dating from 1973 but was not deterred from recidivating. Bolt argues the district court erred in increasing his criminal history category to V because his three prior convictions would only have yielded a criminal history category of IV had they been counted. The district court properly considered not just Bolt's prior convictions, however, but also his numerous arrests for similar criminal conduct. Some of these arrests were for charges of wire fraud and mail fraud—two of the offenses to which Bolt pled guilty in this case. The guideline provision for upward departures specifically authorizes

consideration of similar criminal conduct which has not resulted in conviction, § 4A1.3(a)(2)(E). We conclude the district court acted within its discretion by increasing his criminal history category to V based on criminal conduct which did not lead to convictions. See United States v. Yahnke, 395 F.3d 823, 826 (8th Cir. 2005).

We conclude that the district court did not err by holding Bolt responsible for the losses generated by his Nevada fraud scheme, by applying a sophisticated means enhancement, or by departing upwards based on the inadequacy of his criminal history category. The judgment of the district court is affirmed.

_____