# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 17-1829

———————————————

United States of America

*Plaintiff - Appellee*

v.

Bradley R. Cornelsen

*Defendant - Appellant*

———————

Appeal from United States District Court
for the Southern District of Iowa - Council Bluffs

———————

Submitted: January 12, 2018
Filed: June 28, 2018

———————

Before SMITH, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.

———————

MELLOY, Circuit Judge.

A jury convicted Bradley Cornelsen of five counts of wire fraud, in violation of 18 U.S.C. § 1343. The district court[1] sentenced Cornelsen to 48 months' imprisonment and 3 years' supervised release and ordered him to pay $1,400,320.09

———————————————

[1]The Honorable Stephanie M. Rose, United States District Court Judge for the Southern District of Iowa.

in restitution. Cornelsen challenges the district court's calculation of the loss amount and the restitution award. We affirm, except as to the restitution award where we reverse in part and remand for further consideration in light of Lagos v. United States, 138 S. Ct. 1684 (May 29, 2018).

From 2007 until 2014, Cornelsen was employed by MV Transportation (MVT), a passenger transport company based in Dallas, Texas. He worked in the company's office in Elk Horn, Iowa. In 2010, Cornelsen was named the company's Chief Financial Officer. In April 2014, Cornelsen was terminated and MVT launched an internal review into his corporate activities. After several months of private investigation, which cost the company $763,746.74, MVT referred the matter to the U.S. Attorney.

In January 2016, a grand jury indicted Cornelsen on five counts of wire fraud. The indictment charged Cornelsen with defrauding MVT of $297,985.13 through unauthorized wire transfers made between January 2013 and February 2015.

At trial, David Oswald, a forensic accounting expert, testified regarding an Ernst & Young (E&Y) audit of Cornelsen's corporate activities. The E&Y audit estimated Cornelsen defrauded MVT of a total of $1,453,025.42. Accordingly, the government presented evidence of uncharged, yet related conduct, including unauthorized, non-business expenditures made using manual checks and a company credit card. In November 2016, a jury found Cornelsen guilty on all five counts of wire fraud.

The Presentence Investigative Report recommended the court find an actual loss amount of $1,150,320.09 for purposes of determining the base offense level under United States Sentencing Guidelines § 2B1.1. At sentencing, Special Agent Kevin Kohler, a certified public accountant, testified to the calculations. Kohler used the E&Y audit's $1,453,025.42 calculation as a baseline and recommended the court

(1) remove a $206,250.00 personal loan that did not appear to be fraudulent, (2) remove $321,846.75 in potentially ambiguous vehicle expenditures, and (3) include a $225,391.42 unauthorized cash bonus from November 2012. After making certain credibility findings and determining the E&Y audit to be a "very conservative" estimate of the actual losses, the district court adopted the recommended loss calculation of $1,150,320.09. The court then turned to restitution, awarding $1,150,320.09 in losses, as well as $250,000.00 in attorney and accountant fees, for a total restitution award of $1,400,320.09.

Cornelsen appeals the district court's calculation of the loss amount and restitution award, arguing any amount over the $297,985.13 stated in the indictment, and any conduct outside of the time period stated in the indictment, cannot be included in either calculation. Cornelsen also argues MVT is not a "victim" under the Guidelines or the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A(a)(2).

Turning first to the calculation of the loss amount, we review the district court's interpretation of the term "loss" under the Guidelines *de novo*, United States v. Fazio, 487 F.3d 646, 657 (8th Cir. 2007), and its factual findings for clear error, United States v. Bolt, 782 F.3d 388, 390 (8th Cir. 2015). We grant "deference to the district court's loss calculations because of its unique ability to assess the evidence and estimate the loss," Fazio, 487 F.3d at 659 (citations omitted), and require a "reasonable estimate of loss rather than a precise determination," United States v. Farrington, 499 F.3d 854, 860 (8th Cir. 2007). The government must establish the loss amount by a preponderance of the evidence. Id. at 859.

The Guidelines' commentary defines "loss" as "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A); see id. (defining actual loss as "the reasonably foreseeable pecuniary harm that resulted from the offense" and defining intended loss as "(I) . . . pecuniary harm that the defendant purposefully sought to

-3-

inflict; and (II) . . . intended pecuniary harm that would have been impossible or unlikely to occur"). The commentary also clearly defines a "victim" as "any person who sustained any part of the actual loss," with "person" including "individuals, corporations, companies, associations, [and] firms." U.S.S.G. § 2B1.1 cmt. n.1. Based on § 2B1.1 and the associated commentary, we conclude the district court correctly determined MVT was a victim and suffered actual and intended pecuniary losses as a result of Cornelsen's fraudulent activities.

Furthermore, "we take a broad view of what conduct and related loss amounts can be included in calculating loss." United States v. DeRosier, 501 F.3d 888, 896 (8th Cir. 2007). "Relevant conduct under the guidelines need not be charged to be considered in sentencing, and it includes all acts and omissions 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" United States v. Radtke, 415 F.3d 826, 841 (8th Cir. 2005) (quoting U.S.S.G. § 1B1.3(a)(2)); see also United States v. Boesen, 541 F.3d 838, 850–51 (8th Cir. 2008) (affirming a district court's loss calculation under U.S.S.G. § 2B1.1 when the court included unindicted criminal activity). To constitute a "common scheme or plan," two or more offenses "must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3 cmt. n.5(B)(i). "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are a part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3 cmt. n.5(B)(ii).

We conclude the district court did not commit clear error in finding that the uncharged conduct, including the unauthorized use of manual checks and credit card charges, was a part of Cornelsen's common scheme or plan or the same course of conduct. As the court reasonably relied on the E&Y audit and related expert testimony, the evidence related to the charged and uncharged conduct, and Agent

Kohler's testimony as to the suggested modifications, we conclude the loss calculation is supported by a preponderance of evidence. Because we give deference to the district court's assessment of this evidence, we find no clear error in the court's loss calculation. See Fazio, 487 F.3d at 659; see also United States v. Kelley, 861 F.3d 790, 802 (8th Cir. 2017) ("It is well established that in sentencing matters a district court's assessment of witness credibility is quintessentially a judgment call and virtually unassailable on appeal." (citation omitted)).

Second, district courts must apply the MVRA when applicable. See 18 U.S.C. § 3663A(a)(1) ("[T]he court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense."); see also United States v. Frazier, 651 F.3d 899, 904 (8th Cir. 2011) ("The purpose of the MVRA is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." (citation omitted)). "We review the district court's interpretation of the MVRA de novo and its determination of the restitution award amount for clear error." United States v. Aden, 830 F.3d 812, 816 (8th Cir. 2016). The government must establish the restitution amount by a preponderance of the evidence. 18 U.S.C. § 3664(e).

Based on Cornelsen's wire fraud convictions, the MVRA applies. See United States v. Louper-Morris, 672 F.3d 539, 566 (8th Cir. 2012) (holding the MVRA "requires individuals who are convicted of wire fraud to pay restitution to their victims" (citations omitted)); see also 18 U.S.C. § 3663A(c)(1)(A)(ii) (applying mandatory restitution for victims of "an offense against property . . . including any offense committed by fraud or deceit."). Additionally, MVT suffered direct losses as a result of Cornelsen's fraudulent activities and thus qualifies as a "victim" under the MVRA. See id. § 3663A(a)(2) (defining a "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered"); see also United States v. Chalupnik, 514 F.3d 748, 754 (8th Cir. 2008) (concluding a company qualified as an MVRA victim). Thus, we agree with

the district court's determination that MVT is entitled to restitution from Cornelsen under the MVRA.

Cornelsen argues the restitution award cannot include conduct not explicitly charged in the indictment. However, in determining the amount of restitution, "the court shall award as restitution 'the full amount' of a victim's losses." United States v. Lange, 592 F.3d 902, 907 (8th Cir. 2010) (quoting 18 U.S.C. § 3664(f)(1)(A)). Relatedly, language in the MVRA "reflects an intent to include the defendant's total conduct in committing the offense." Chalupnik, 514 F.3d at 753. As such, "[w]e have consistently held that restitution may be ordered for criminal conduct that is part of a broad scheme to defraud, even if the defendant is not convicted for each fraudulent act in the scheme." See DeRosier, 501 F.3d at 897; see also Farrington, 499 F.3d at 861. As discussed above, we conclude the district court did not commit clear error in finding the uncharged conduct to be a part of Cornelsen's broad scheme to defraud MVT.

Finally, we note the Supreme Court's recent decision in Lagos v. United States. 138 S. Ct. 1684. In Lagos, the Petitioner-Defendant challenged the district court's inclusion of "professional fees for attorneys, accountants, and consultants" incurred by the victims in a restitution award under § 3663A(b)(4) of the MVRA. Id. at 1687. Section 3663A(b)(4) requires reimbursement to:

> the victim for lost income and necessary child care, transportation, and other expenses *incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.*

Id. at 1688 (quoting 18 U.S.C. § 3663A(b)(4)). Focusing on the scope of "investigation" and "proceedings" in the italicized phrase, the Court concluded these words "are limited to government investigations and criminal proceedings." Id. at

1688.  As a result, the Court held the Petitioner was "not obliged to pay the portion of the [challenged] restitution award."  Id. at 1690.

Lagos appears to run contrary to our precedent.  See United States v. Stennis-Williams, 557 F.3d 927, 930 (8th Cir. 2009) ("This court has held that privately incurred investigative costs constitute foreseeable losses that are directly caused by a defendant's fraudulent conduct.  Therefore, the district court did not clearly err by including the estate's investigative costs in its restitution calculation." (citations omitted)); DeRosier, 501 F.3d at 897 ("Our case law has specifically approved the inclusion of attorney's fees and investigative costs in a restitution award when these losses were caused by fraudulent conduct.").  In light of Lagos, therefore, we vacate the portion of the restitution order awarding $250,000.00 for the company's accounting and attorney's fees and remand to the district court for further consideration.

For these reasons, we affirm the judgment of the district court except with respect to the investigative costs included in the restitution award, which we reverse and remand for further consideration.

_____