# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2950

_____

United States of America

*Plaintiff - Appellee*

v.

Jamal Mohamud Aden

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: May 31, 2016
Filed: July 29, 2016

_____

Before SMITH, BEAM, and KELLY, Circuit Judges.

_____

BEAM, Circuit Judge.

Jamal Mohamud Aden appeals his eight-month sentence for wire fraud as procedurally and substantively unreasonable. He also challenges the district court's[1]

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

finding of a loss amount of $194,869 and the resulting restitution award. For the reasons discussed below, we affirm.

## I.    BACKGROUND

Aden owned and operated two convenience stores in St. Paul, Minnesota: St Paul Grocery 1 (SPG1) and St. Paul Grocery 2 (SPG2). In October 2010, Aden signed the Food Nutrition Service (FNS) 252 application for SPG1, making the store eligible to participate in the Supplemental Nutrition and Assistance Program (SNAP), previously known as the Food Stamp Program, administered by the United States Department of Agriculture (USDA). A year later he signed the FNS 252 application for SPG2. By signing the forms, Aden certified that he had read and reviewed the program rules and regulations. Under the SNAP program, recipients are prohibited from receiving cash for SNAP benefits, may not use the benefits to pay down a store credit, and are only allowed to purchase approved food items. SNAP provides low-income families with nutritious food by allowing those families to purchase eligible food items from approved retail stores. Under this system, SNAP recipients are issued Electronic Benefit Transfer (EBT) cards, like credit or debit cards, to be used at participating stores. Stores use a point-of-sale machine that debits SNAP recipients' accounts in the amount of the purchase. The USDA then reimburses the store owner. Aden maintained two accounts at banks in St. Paul where reimbursements were sent.

In May 2011, a confidential reliable informant (CRI) for the USDA Inspector General entered SPG1 and asked Aden to exchange his SNAP benefits for cash. Aden agreed to give the CRI $50 in cash for a $100 charge on his EBT card. Aden swiped the EBT card for $97.08, but due to police presence near the store, Aden told the CRI to pick up the cash at a later time. When the CRI returned, a store clerk handed him $50 in cash. Several months later USDA investigators were informed of suspicious use of SNAP benefits at SPG1. A camera was pointed at the SPG1

entrance from December 11, 2012, to January 9, 2013, and captured approximately forty-five occasions where SNAP benefit users paid for $50 worth of groceries on their EBT cards but left the store with "very small bags not commensurate to $50 or more worth of merchandise or with no visible merchandise at all." In later transactions, CRIs received cash for SNAP benefits and purchased cigarettes, a prohibited item, at Aden's stores. On January 27, 2013, a camera was set up outside SPG2. It recorded thirty-four instances of illegal EBT transactions. USDA Agent Bucci, who was assigned to the case, also personally witnessed SNAP recipients purchase non-approved items at SPG1 and SPG2.

Based on the surveillance footage, testimony from CRIs, and observations from Agent Bucci, search warrants were obtained for SPG1, SPG2, Aden's home, a vehicle owned by Aden and his business partner, a vehicle owned by Aden, and a safe found in Aden's vehicle. When the warrants for SPG1 and SPG2 were executed, USDA agents found security camera recordings of Aden and cashiers exchanging SNAP benefits for cash, EBT cards belonging to SNAP recipients, and records of EBT credit accounts, all evidence of trafficking SNAP benefits for cash and unauthorized items. The in-store security footage showed at least forty-six instances of Aden participating in fraudulent SNAP transactions. SPG1 and SPG2 customers also confirmed the fraud. On February 9, 2015, Aden pled guilty to wire fraud in violation of 18 U.S.C. § 1343.

To determine the loss amount, Agent Bucci used a comparative statistical analysis in which he selected three convenience stores the same size or larger than SPG1 and SPG2 in the same zip code that were not suspected of SNAP fraud to compare to Aden's stores. The analysis assumed that all transactions under $25 were legitimate. Conversely, because none of the comparison stores had a single SNAP transaction above $104.56, the analysis assumed that all transactions above $104.56 were fraudulent. Agent Bucci then calculated the average SNAP sales between $25 and $104.56 for the three comparison stores for January 18, 2011, through June 6,

2013, to compare to SPG1; and for January 5, 2012, through June 6, 2013, to compare to SPG2. Finally, he subtracted the average amount of SNAP sales at the comparison stores from SPG1's and SPG2's SNAP sales. SPG1 had $74,187.27 in SNAP transactions between $25 and $104.56 and $106,644.73 in SNAP transactions above $104.56. The comparison stores had $6,322.53 in SNAP transactions between $25 and $104.56 and no SNAP transactions above $104.56. Thus, SPG1 had $174,509.47[2] more SNAP transactions than the comparison stores.[3] SPG2 had $23,593.05 in SNAP transactions between $25 and $104.56 and $14,688.95 in SNAP transactions above $104.56. The comparison stores had $4,188.11 in SNAP transactions between $25 and $104.56 and no SNAP transactions above $104.56. Thus, SPG2 had $34,093.89[4] more in SNAP transactions than the comparison stores. Agent Bucci determined that the total amount of fraudulent transactions, and thus the loss amount, for the two stores was $206,603.37. Because the loss was between $200,000 and $400,000, twelve levels were added to the base offense level of seven, and the presentence investigation report (PSR) suggested a Guidelines range of twenty-one to twenty-seven months.

At the sentencing hearing, the Government suggested the district court consider $194,869 the loss amount for the Guidelines calculation, which would make the Guidelines range fifteen to twenty-one months. This loss amount was based on Agent Bucci's loss calculation, where he subtracted $11,734.04 to account for fraudulent transactions committed by Aden's business partner, Saed Marouf, which left a total loss amount of $194,869.33 for Aden. For the purpose of restitution, the Government

---

[2]$74,187.27 + $106,644.73 = $180,832. $180,832 - $6,322.53 = $174,509.47.

[3]The Government's calculation erroneously listed $172,509.48 as the amount of fraudulent transactions for SPG1. However, since this amount was used at the district court level and benefitted Aden, we will also use $172,509.48 as the loss amount for SPG1 for the purpose of this appeal.

[4]$23,593.05 + $14,688.95 = $38,282. $38,282 - $4,188.11 = $34,093.89.

deducted $5,301.70 from the $194,869 Guidelines loss amount because four of Aden's customers were charged with SNAP fraud and were already paying restitution. Thus, Aden's total restitution amount was $189,567.30. In the plea agreement Aden accepted responsibility for the offense, admitting that he "devised a scheme and artifice to defraud the SNAP program and the United States, and to obtain money by means of materially fraudulent representations" and "exchanged SNAP benefits for cash via EBT transactions at [SPG1] and [SPG2]." The plea agreement stated that the offense level should be increased ten levels pursuant to United States Sentencing Guideline (U.S.S.G.) § 2B1.1(b)(1)(F) since the offense resulted in a loss of less than $200,000. Aden acknowledged that the Mandatory Victim Restitution Act (MVRA) applied, but no restitution amount was agreed upon. In his sentencing memorandum and again at the sentencing hearing, Aden argued that the loss amount should be restricted to those transactions corroborated by video surveillance evidence. Using his analysis, the Government could only prove a loss amount of $7,559.13, which would result in a two-level enhancement, making Aden's Guidelines range zero to six months instead of fifteen to twenty-one months.

The court ultimately adopted the PSR, accepted the Government's proposal for the loss amount of $194,869, and found that the Guidelines range was fifteen to twenty-one months. The court also accepted the Government's U.S.S.G. § 5K motion, departing from the Guidelines range and sentencing Aden to eight months in prison. The court ordered Aden pay restitution in the amount of $189,567.30. On appeal, Aden challenges (1) the loss amount calculation; (2) the restitution order; (3) and the procedural and substantive reasonableness of his sentence.

## II.    DISCUSSION

### A.    Loss Calculation

Aden challenges the amount of loss, arguing that the Government proved, at most, a loss of $7,559.13 attributable directly or indirectly to him. We disagree. We review de novo the district court's interpretation of loss when used in a Guidelines calculation. United States v. Fazio, 487 F.3d 646, 657 (8th Cir. 2007). We review the district court's fraud loss calculation for clear error, and "as long as the determination is plausible in light of the record as a whole, clear error does not exist." United States v. Farrington, 499 F.3d 854, 859 (8th Cir. 2007) (quoting United States v. Coon, 187 F.3d 888, 899 (8th Cir. 1999)). Sentencing enhancements must be proved by a preponderance of the evidence, id., but "the district court need only make a reasonable estimate of loss rather than a precise determination," id. at 860. To determine the amount of loss, Agent Bucci from the USDA, as noted above, used a statistical comparative analysis, comparing SNAP transactions at SPG1 and SPG2 to SNAP transactions at three convenience stores in the same zip code that were not suspected of SNAP fraud. He assumed all transactions under $25 were legitimate, assumed transactions above $104.56 were fraudulent (because none of the comparison stores had *any* SNAP transactions above that amount), averaged the SNAP sales between $25 and $104.56, and then subtracted that averaged amount from the SNAP sales in that same range at SPG1 and SPG2. This analysis revealed that SPG1 and SPG2 processed $206,603.37 more SNAP benefits than the comparison stores, which supports the fraud determination.

Moreover, other courts have accepted methods such as this for proof of loss in SNAP fraud cases. See, e.g., United States v. Sayed, No. 13-CR-20496, 2014 WL 7157104, at *2 (E.D. Mich. 2014) (stating that a comparative statistical analysis is reasonable). Thus, although, as Aden points out, the video recordings of illegal SNAP transactions are sufficient evidence of loss, a recording of each illegal

transaction is not necessary. The comparative approach used here was reliable and well-reasoned. See United States v. Jones, 641 F.3d 706, 712-13 (6th Cir. 2011). As such, the district court's finding of a loss amount of $194,869 (the final loss amount after deducting transactions attributed to Marouf) was a reasonable estimate supported by a preponderance of the evidence and thus, not clearly erroneous.

## B.    Restitution Order

Aden similarly argues that because the restitution order is based on the Government's allegedly inflated and speculative loss amount calculation, the restitution order is also clearly erroneous. We disagree. We review the district court's interpretation of the MVRA de novo and its determination of the restitution award amount for clear error. United States v. Statman, 604 F.3d 529, 535 (8th Cir. 2010). As discussed above, the district court did not err in adopting $194,869 as the loss amount. The loss amount is comprised of all illegal SNAP transactions at Aden's stores during the relevant time frame, minus the transactions attributed to Marouf. Under the MVRA, "the court shall award as restitution 'the full amount' of a victim's losses." United States v. Lange, 592 F.3d 902, 907 (8th Cir. 2010) (quoting 18 U.S.C. § 3664(f)(1)(A)). Thus, the district court correctly ordered Aden to pay restitution in the amount of $189,576.30, which is the loss amount discussed above minus the amount of restitution ($5,301.70) already paid by four of Aden's customers charged with SNAP fraud. The restitution award was based on a reasonable estimate of loss and not clearly erroneous.

## C.    Sentence

Finally, Aden argues that his eight-month prison sentence is both procedurally and substantively unreasonable. We disagree. We review the reasonableness of the district court's sentence for abuse of discretion. Gall v. United States, 552 U.S. 38, 46 (2007). Aden was released from custody on April 29, 2016, and this appeal was

submitted on May 31, 2016. As such, even if the court abused its discretion, which we would find that it did not, this issue is moot. See United States v. Williams, 483 F.3d 889 (8th Cir. 2007) (dismissing as moot the appeal contesting the defendant's sentence because she was released from custody before the court heard the appeal).

## III.  CONCLUSION

The judgment of the district court is affirmed.

_____