# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3469

_____

United States of America

*Plaintiff - Appellee*

v.

Melvin Harmon

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 27, 2019
Filed: December 10, 2019

_____

Before KELLY, MELLOY, and STRAS, Circuit Judges.

_____

MELLOY, Circuit Judge.

A jury convicted Melvin Harmon of fraudulently registering the personal vehicles of St. Louis residents in Illinois to avoid Missouri tax. At sentencing, the district court calculated an actual loss amount of $119,359.92, ordered Harmon to make restitution in the same amount, and sentenced Harmon to a below-guidelines term of 33 months. Harmon challenges the district court's calculation of the loss amount and the restitution award. He also challenges the district court's application

of a two-level enhancement for obstruction of justice. For the reasons discussed below, we affirm in part and reverse in part.

## I. Background

From 2010 to 2016, Harmon was an employee in the Illinois State Motor Vehicle Registration Office in Granite City, Illinois, where he issued vehicle registrations. Each transaction he completed was tracked by an audit stamp and unique identification number, called a RAC-ID number. Illinois collects tax on vehicles registered within the state only once, at the initial registration. Missouri collects tax on vehicles registered within the state annually.

In 2015, the Illinois Secretary of State Inspector General flagged fourteen motor vehicle registrations processed by Harmon as having inconsistent residential addresses. That is, a Missouri address was listed on the vehicle title and an Illinois address was listed on the registration application. Several of the Illinois addresses were not residences. The Inspector General referred the case to Investigator Don Thierry and Sergeant Douglas McFarland of the Illinois Secretary of State Police. Thierry and McFarland collected all of Harmon's vehicle registration transactions from a four-to-five-month period—a total of 1,100 transactions. Of that sample, Thierry and McFarland found 200 transactions bearing similarities to the initially-suspicious fourteen registrations. Similarities included: vehicles were purchased in Missouri but registered in Illinois; sales prices reported in Illinois were lower than the actual purchase price; and Harmon's RAC-ID number or audit stamp was linked to the registration transaction.

In September 2017, a grand jury issued an eight-count superseding indictment, charging Harmon on six counts: Conspiracy to Commit an Offense Against the United States, in violation of 18 U.S.C. § 371; three counts of Mail Fraud, in violation of 18 U.S.C. § 1341; and two counts of Interstate Transportation of Securities, in violation

of 18 U.S.C. § 2314. Three co-defendants were also charged. At trial, Thierry and McFarland testified as to the method of determining the number of fraudulent transactions. Special Agent Buehrle of the Missouri Department of Revenue also testified as to the amount of lost revenue. Harmon testified in his defense. In May 2018, a jury found Harmon guilty on five of the six counts charged.[1]

The Presentence Investigation Report (PSR) grouped all counts. To determine Harmon's base offense level under U.S.S.G. § 2B1.1, the PSR recommended the district court find an actual loss amount of $119,359.92. That amount represented one year's worth of sales tax Missouri was unable to collect for 155 fraudulently registered vehicles that were attributable to Harmon.[2] The PSR listed each of the 155 vehicles and its corresponding lost tax amount.[3] The PSR recommended the district court increase the base offense level by eight levels based on the loss amount, two levels for use of sophisticated means, four levels for Harmon's role in the offense, and two levels for obstruction of justice, resulting in a total offense level of 23. Harmon objected.

At sentencing, Harmon reaffirmed his objections. In support of the eight-level enhancement for loss amount, the government put on testimony by Thierry and Buehrle as to the process of investigating and calculating the amount of lost sales tax for the 155 vehicles. The government argued the calculation was reasonable and "very conservative." The government also argued, and put on supporting testimony,

---

[1]The government did not proceed to trial on one of the § 2314 counts.

[2]Although the investigation originally produced a list of 200 transactions, the list was reduced to 155 transactions for purposes of sentencing. Some entries in the list of 200 were duplicates, which were removed. All but two of the 155 transactions were directly attributable to Harmon by his RAC-ID number. Those not attributable by his RAC-ID number were included based on witness testimony at trial.

[3]The parties refer to differing figures when discussing the list's total vehicle count. We count 155 vehicles on the list and will therefore use that figure.

that a two-level enhancement for obstruction of justice was appropriate based on Harmon's alleged perjury at trial and improper interaction with a possible witness.

The district court adopted the PSR and accepted the government's proposed loss amount. It applied the two-level enhancement for obstruction of justice and the eight-level enhancement for loss amount, finding the Guidelines range for each count was 46 to 57 months. It then varied from that range and imposed a sentence of 33 months. The court ordered Harmon pay restitution for the total loss amount. On appeal, Harmon challenges (1) the loss amount calculation; (2) the restitution order; and (3) the two-level enhancement for obstruction of justice.

## II. Discussion

## A. Loss Calculation

Harmon first challenges the loss calculation, arguing it was based on speculation and uncharged conduct. We conduct a de novo review of the district court's application of the guidelines to the facts. United States v. Scott, 448 F.3d 1040, 1043 (8th Cir. 2006). However, we review the loss amount calculation for clear error, and "as long as the determination is plausible in light of the record as a whole, clear error does not exist." United States v. Aden, 830 F.3d 812, 815 (8th Cir. 2016) (quoting United States v. Farrington, 499 F.3d 854, 859 (8th Cir. 2007)). While the government must prove enhancements by a preponderance of the evidence, "the district court need only make a reasonable estimate of loss rather than a precise determination." Farrington, 499 F.3d at 860.

To calculate the loss amount, as described above, the investigators combined the amount of lost sales tax for each of the 155 vehicles that were attributable to Harmon. The calculation did not rely on a statistical or comparative analysis. Cf. Aden, 830 F.3d at 816. Nor did it rely on speculation, as Harmon claims. Rather, the

calculation relied upon concrete information and simple addition.  Further, the loss amount need not be limited to only those vehicle transactions proven at trial.  "[W]e take a broad view of what conduct and related loss amounts can be included in calculating loss."  United States v. DeRosier, 501 F.3d 888, 896 (8th Cir. 2007).  To the extent the loss amount included uncharged conduct, it was relevant conduct and part of Harmon's common scheme or plan and therefore appropriately included in the calculation.[4]  See United States v. Cornelsen, 893 F.3d 1086, 1089 (8th Cir. 2018); see also United States v. Radtke, 415 F.3d 826, 841 (8th Cir. 2005) ("Relevant conduct under the guidelines need not be charged to be considered in sentencing, and it includes all acts and omissions 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" (quoting U.S.S.G. § 1B1.3(a)(2))).

We conclude the method of calculation resulted in a loss amount that was a reasonable estimate of loss to the State of Missouri.  The loss amount was well supported by the evidence and is, therefore, not clearly erroneous.  Moreover, it was obviously sufficient to establish the amount necessary to trigger the eight-level enhancement for a loss amount greater than $95,000 but less than $150,000.  U.S.S.G. § 2B1.1(b)(1)(E).  The enhancement was correctly applied.

## B. Restitution

Harmon relies on the same arguments to contend that the government failed to prove the amount of restitution by a preponderance of the evidence.  We review the district court's factual determinations underlying a restitution order for clear error.  See DeRosier, 501 F.3d at 896.

---

[4]Harmon argues he can be held responsible only for those nine transactions proven at trial.  As described supra note 2, for purposes of sentencing, the government established that the 155 transactions listed in the PSR were attributable to Harmon by his RAC-ID number or by witness testimony at trial.

As above, the district court did not err in adopting the government's proposed loss amount. The loss amount reflects the amount of sales tax the State of Missouri was unable to collect because of Harmon's conduct, as proven by the evidence. Under the Mandatory Victim Restitution Act, "the court shall award as restitution 'the full amount' of a victim's losses." United States v. Lange, 592 F.3d 902, 907 (8th Cir. 2010) (quoting 18 U.S.C. § 3664(f)(1)(A)). As we have consistently held, this may include losses suffered "for criminal conduct that is part of a broad scheme to defraud, even if the defendant is not convicted for each fraudulent act in the scheme." Cornelsen, 893 F.3d at 1091 (quoting DeRosier, 501 F.3d at 897). Here, the restitution award was based on a reasonable estimate of loss, see Aden, 830 F.3d at 816, and was not clearly erroneous.

## C. Obstruction

Finally, Harmon argues the district court erred in applying a two-level enhancement for obstruction of justice. "We review a district court's factual findings underlying an obstruction of justice enhancement for clear error and its construction and application of the Guidelines de novo." United States v. Abdul-Aziz, 486 F.3d 471, 478 (8th Cir. 2007) (quoting United States v. Nichols, 416 F.3d 811, 821 (8th Cir. 2005)).

The PSR recommended Harmon receive the two-level enhancement under U.S.S.G. § 3C1.1 because he submitted false testimony at trial and spoke to a potential witness about writing a letter on his behalf. At sentencing, Harmon objected to the enhancement and the government put on testimony in response. In ruling on the enhancement, the district court summarily overruled Harmon's objections:

> Let the record reflect that having considered the defendant's objections as enumerated by defendant, evidence having been presented with respect to the objections by the government, and having considered that evidence as well as the other evidence presented at trial, these objections

set forth in the defendant's notice of objections and specifically referred to in defendant's oral statement of objections are hereby overruled. The Court concluding that the calculations set out by the Guidelines are appropriate based upon the evidence available.

We give "great deference" to a district court when it applies an enhancement for obstruction of justice. United States v. Calderon-Avila, 322 F.3d 505, 507 (8th Cir. 2003) (per curiam). However, we have reversed the application of an enhancement when the district court's findings provided insufficient support. See, e.g., Abdul-Aziz, 486 F.3d at 479; United States v. Flores, 362 F.3d 1030, 1038–39 (8th Cir. 2004); see also United States v. Tyndall, 521 F.3d 877, 883 (8th Cir. 2008) (affirming an obstruction-of-justice enhancement while stating that "we once again emphasize the importance of detailed findings" to support such a ruling).

Here, the district court's statement did not make any specific factual findings or clarify the basis—perjury or witness interference—for the enhancement. Therefore, without coming to a conclusion as to whether the enhancement could be appropriately applied in this case, we conclude the record "does not establish with the required clarity that the district court exercised its independent judgment in reaching its decision to impose the enhancement." Abdul-Aziz, 486 F.3d at 479.

The judgment of conviction and restitution order are affirmed. The sentence is vacated. We remand the case to the district court for resentencing consistent with this opinion.

STRAS, Circuit Judge, concurring in part and dissenting in part.

This is how the law drifts. The court starts with the rule that a district court must make "specific factual findings" when an obstruction-of-justice enhancement rests on perjury, and apparently extends it to the alternative finding that Harmon interfered with a witness. *Ante* at 7; *see United States v. Dunnigan*, 507 U.S. 87,

96–97 (1993) (explaining that this requirement ensures that district courts do not "enhance sentences as a matter of course whenever the accused takes the stand and is found guilty"). It relies exclusively on cases involving perjury, and none discusses any other possible ground for the enhancement. *See United States v. Tyndall*, 521 F.3d 877, 882–83 (8th Cir. 2008); *United States v. Abdul-Aziz*, 486 F.3d 471, 478–79 (8th Cir. 2007); *United States v. Flores*, 362 F.3d 1030, 1037–39 (8th Cir. 2004). Yet the court does not acknowledge that it is applying a perjury-specific rule, nor tell us why this rule, which is motivated by concerns about protecting a defendant's right to testify, applies to a finding involving witness interference. *See Dunnigan*, 507 U.S. at 96–97. With no answer, we can only guess.

My answer is different. I would rely on the general principle that district courts need not provide detailed findings as long as there is "sufficient evidence" in the record for "meaningful appellate review." *United States v. Hairy Chin*, 850 F.3d 398, 403 (8th Cir. 2017) (per curiam). There is more than enough here; no one was left guessing about what acts or evidence prompted the enhancement. The government presented evidence that Harmon asked one of its potential witnesses to write a letter about his character. Not only was this request improper, it violated an express condition of pretrial release. And when Harmon argued at sentencing that this act did not rise to the level of obstruction of justice, the court overruled his objections based on the "evidence presented." It is no mystery, then, how he ended up with the enhancement: he attempted, at least "indirectly," to "unlawfully influenc[e]" a witness. U.S.S.G. § 3C1.1 cmt. n.4(A). Because nothing keeps us from meaningfully reviewing this finding, I respectfully dissent from Part II.C. of the court's opinion.

———————————————