# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-2904
_____

United States of America,

*Plaintiff - Appellee,*

v.

Frantz Pierre,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: March 13, 2015
Filed: July 31, 2015

_____

Before WOLLMAN and COLLOTON, Circuit Judges, and WHITE,[1] District
Judge.

_____

_____

    [1]The Honorable Ronnie L. White, United States District Judge for the Eastern
District of Missouri, sitting by designation.

COLLOTON, Circuit Judge.

This is an interlocutory appeal from an order of the district court[2] denying Frantz Pierre's motion to dismiss an indictment on double jeopardy grounds. A grand jury in Minnesota charged Pierre with one count of conspiracy to defraud the United States and one count of money laundering. He argues that the Double Jeopardy Clause of the Fifth Amendment bars the prosecution because he was previously convicted in Florida for the same conspiracy offense charged in the Minnesota indictment. We conclude that the prior conviction did not encompass either the same conspiracy as the present charged conspiracy or the money laundering offense charged in the Minnesota indictment. We therefore affirm the district court's order.

I.

In May 2013, a grand jury in the District of Minnesota charged Pierre and three co-defendants with conspiracy to defraud the government, in violation of 18 U.S.C. § 286. The indictment alleges that the defendants agreed to defraud the Internal Revenue Service by submitting false tax returns and claiming undeserved tax refunds. According to the charge, Pierre and his co-conspirators filed approximately 1066 false tax returns, claiming approximately $6.9 million in fraudulent refunds, from July 2010 through May 2011. They used social security numbers belonging to Florida prisoners on returns for tax years 2009 and 2010. The defendants also allegedly incorporated fictitious businesses in Minnesota, opened bank accounts on behalf of those businesses, and collected tax refunds in the bank accounts. In a second count, the indictment charged Pierre with money laundering, in violation of 18 U.S.C. § 1957.

---

[2]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

In September 2012, before the Minnesota indictment was returned, Pierre and two co-defendants were indicted in the Southern District of Florida. Pierre's co-defendants in the Florida indictment were not mentioned in the Minnesota indictment. The Florida indictment charged all defendants with conspiracy to defraud the United States under 18 U.S.C. § 286, conspiracy to use unauthorized access devices under § 1029(b)(2), use of unauthorized access devices under § 1029(a)(2), and aggravated identity theft under § 1028A(a)(1). The indictment also charged Pierre with possession of fifteen or more unauthorized access devices (*i.e.*, debit cards and social security numbers), in violation of § 1029(a)(3).

The Florida indictment alleged that Pierre and his co-conspirators agreed to file fraudulent tax returns, use debit cards to receive tax refunds, and withdraw fraudulently-obtained proceeds from those debit cards. At trial, the government presented evidence that defendants used social security numbers of Florida prisoners on false tax returns for tax year 2009. The defendants filed approximately 338 tax returns and claimed approximately $2.2 million in refunds. To collect the refunds, defendants applied for pre-paid debit cards on behalf of a fictitious business and directed the Internal Revenue Service to deposit tax refunds onto the debit cards. Defendants withdrew approximately $560,000 from the debit cards. On June 1, 2010, law enforcement discovered some of the cards in a traffic stop and then froze all debit cards registered to the business. Agents searched Pierre's Florida home in July 2012 and recovered seventy debit cards and a USB drive containing a list of social security numbers. A jury convicted Pierre on all counts charged against him in the Florida indictment.

In the present case, Pierre moved three times to dismiss his indictment on double jeopardy grounds, and the district court denied the motions. Pierre filed this interlocutory appeal, arguing that the Double Jeopardy Clause bars the indictment against him because the indictment charges him with the same conspiracy for which

he was convicted in Florida. Pierre also argues the district court erroneously denied his request for an evidentiary hearing.

## II.

The Double Jeopardy Clause prohibits the government from subdividing a single criminal conspiracy into multiple violations. *Braverman v. United States*, 317 U.S. 49, 53-54 (1942). In determining whether separately-charged conspiracies are really a single conspiracy, this court applies a "totality of the circumstances" test. *United States v. Thomas*, 759 F.2d 659, 662 (8th Cir. 1985). In applying that test, our cases consider: (1) the timing of the alleged conspiracies; (2) the identity of alleged co-conspirators; (3) the offenses charged in the indictments; (4) the "overt acts charged . . . or any other description of the offenses charged which indicate the nature and the scope of the activity" charged; and (5) the locations of the alleged conspiracies. *Id.* "The essence of the determination is whether there is one agreement to commit two crimes, or more than one agreement, each with a separate object." *Id.* In evaluating these factors, courts may look beyond the indictments and consider evidence adduced at a previous trial. *Id.*

We review the district court's denial of a motion to dismiss an indictment on double jeopardy grounds *de novo* and its related factual findings for clear error. *Id.* Although the indictment charges both a conspiracy to defraud and a substantive count of money laundering, Pierre's argument focuses primarily on the conspiracy. Because the district court concluded that Pierre's double-jeopardy claim was non-frivolous, the government must show by a preponderance of the evidence that the Minnesota and Florida indictments charge separate conspiracies. *Id.*

As to the first factor, we agree with the district court that the conspiracies transpired at different times. The Florida conspiracy began as early as January 2010, when defendants incorporated Tax Professors, Inc., and then ordered debit cards on

behalf of the business. That conspiracy ended shortly after June 1, 2010, when investigators found a portion of the cards during a traffic stop and froze all debit cards associated with Tax Professors, Inc. In contrast, the Minnesota conspiracy began at the earliest in July 2010, when Pierre allegedly filed false tax returns, incorporated the first business in Minnesota, and opened bank accounts for that business. Defendants continued to receive tax refunds until May 2011.

Pierre points to testimony by an IRS agent at the Florida trial that one of the fictitious Minnesota businesses began receiving undeserved tax refunds on July 22, 2010. This testimony, Pierre asserts, shows that some of the tax returns requesting refunds directed to Minnesota bank accounts were filed before June 1, 2010, and that the alleged Minnesota conspiracy thus began before the end of the Florida conspiracy. The record does not show precisely when the conspirators filed the tax returns that led to the Minnesota refunds in July 2010. But even assuming that the first tax returns in the Minnesota conspiracy were filed before the end of the Florida conspiracy, the Minnesota conspiracy continued until May 2011, while the Florida conspiracy ended in June 2010. Some temporal overlap does not preclude a determination of separate conspiracies, particularly where the timing of one conspiracy extends beyond the end of the other. *See United States v. Kienzle*, 896 F.2d 326, 329 (8th Cir. 1990).

Pierre also argues that the Florida conspiracy continued beyond June 2010 because tax returns involved in the Minnesota indictment were filed from Florida computers after the alleged end of the Florida conspiracy. That tax returns in the Minnesota conspiracy were filed from a Florida computer, however, does not establish that the post-June 2010 tax returns were part of the conspiracy charged in Florida. Other factors show that the Florida computers were used after June 2010 in furtherance of the separate conspiracy charged in Minnesota.

The second factor concerning the identity of conspirators likewise suggests that the conspiracies are separate. The Florida conspirators were Pierre, Terry Pierre, and Christmanie Bissainthe, while the Minnesota indictment identifies Pierre, Ronnie Bussell, Christopher Torh, Junior Tervil, N.W., and C.M. as conspirators. There was no evidence at the Florida trial that the conspirators identified in the Minnesota indictment took part in any overt act during the Florida conspiracy. That Frantz Pierre is the only conspirator allegedly involved in both conspiracies weighs in favor of a determination that the conspiracies are separate. *See United States v. Tanner*, 860 F.2d 864, 866-67 (8th Cir. 1988).

Pierre urges us to disregard the separate groups of conspirators because the difference in participants is explained by Pierre's decision to move the Florida conspiracy to Minnesota after law enforcement uncovered the debit-card scheme in Florida. He points to arguments by the prosecutor at Pierre's sentencing in Florida that Pierre moved to Minnesota to "perpetrate this fraud up there" and that Pierre's sentence should be enhanced because he "relocated . . . a fraudulent scheme to another jurisdiction to evade law enforcement." USSG § 2B1.1(b)(10)(A). But the prosecutor's assertion that Pierre moved to Minnesota to "perpetrate this fraud up there" does not preclude the possibility that Pierre formed a new conspiratorial agreement with Minnesota co-conspirators. And the district court in Florida found that there was insufficient evidence to justify the enhancement for relocating a fraudulent scheme.

On the third factor, both indictments charge defendants with conspiracy to defraud the United States, in violation of 18 U.S.C. § 286. "The fact that both indictments charge some of the same statutory violations is not particularly important," however, because "[i]t is possible to have two different conspiracies to commit exactly the same type of crime." *Thomas*, 759 F.2d at 666. The Florida indictment also charged the defendants with conspiracy to use unauthorized access devices—*i.e.*, debit cards—under § 1029(b)(2) and use of unauthorized access

-6-

devices under § 1029(a)(2).  The Minnesota indictment contains no similar charges and does not allege that the defendants used debit cards to carry out the conspiracy.

Under the fourth factor, the nature and scope of the activities charged in the two conspiracies were substantially different.  In the Florida conspiracy, the defendants established fictitious businesses in Florida and collected refunds on pre-paid debit cards.  The Minnesota conspiracy involved incorporating five businesses in Minnesota and receiving tax refunds in those businesses' bank accounts, not onto debit cards.  There are some similarities in how the schemes were carried out—tax returns in both cases were submitted from Florida computers and contained social security numbers of prisoners in Florida—but the basic methodology of the two conspiracies was not the same.[3]

Pierre points to his conviction in Florida under 18 U.S.C. § 1029(a)(3) for possession of unauthorized access devices, which included stolen social security numbers.  *See* 18 U.S.C. § 1029(e)(1) (defining "access device" as "any . . . personal identification number . . . that can be used . . . to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds").  That charge arose from the July 2012 search of Pierre's Florida home, where officers recovered stolen social security numbers used on tax returns filed in the Minnesota conspiracy.  Pierre argues that he has therefore been charged twice based on the "same course of conduct."  The Double Jeopardy Clause, however, does not forbid a conspiracy prosecution merely because the defendant previously was convicted for a substantive offense that might have constituted an overt act in the conspiracy.  *See United States v. Felix*, 503 U.S. 378, 391-92 (1992).

---

[3]Pierre also asserts that social security numbers used in the tax returns from both alleged conspiracies were obtained from the same source and that the W-2 forms submitted with the returns identified the same employers.  But he points to no evidence in support of these assertions, and the additional facts if true would not outweigh other factors in any event.

The final factor concerns the location of the two conspiracies. The Florida conspiracy took place almost exclusively in Florida. The conspirators incorporated Tax Professors, Inc., in Florida; the debit cards were mailed to the Florida address of another fictitious business; and almost all ATM withdrawals attributed to the debit cards occurred in Florida, except for "a couple" of transactions in Minnesota. In contrast, substantial parts of the Minnesota conspiracy took place in Minnesota. The conspirators incorporated five tax preparation businesses in Minnesota, opened bank accounts in Minnesota on behalf of those businesses, and directed the IRS to deposit refunds into the bank accounts. Pierre contends that the locations of the two conspiracies overlapped insofar as (1) tax returns involved in the Minnesota conspiracy were filed from a Florida computer, (2) the tax returns used social security numbers of Florida inmates, and (3) evidence of the Minnesota conspiracy was found in Pierre's Florida home. Despite some geographical overlap between the two conspiracies, however, significant acts involved in the Minnesota conspiracy took place in Minnesota, a location that was not involved in the Florida conspiracy.

We conclude that the government has shown by a preponderance of the evidence that the Florida and Minnesota indictments charge separate conspiracies. The conspiracies involved different co-conspirators, occurred at different times, used distinct methodologies, and were focused in different States. The substantive count of money laundering also does not place Pierre in jeopardy twice, because no money laundering was charged in the Florida case.

Pierre complains that the district court erroneously denied him an evidentiary hearing on the double jeopardy issue. For a motion to dismiss on double jeopardy grounds, "a separate evidentiary hearing may be required," but only where "relevant facts cannot otherwise be ascertained." *United States v. Hively*, 437 F.3d 752, 762 (8th Cir. 2006); *see United States v. Curry*, 328 F.3d 970, 973-74 (8th Cir. 2003).

We conclude the district court did not abuse its discretion in resolving the motion without a hearing. Pierre contends that an evidentiary hearing would have allowed him to elicit evidence that he returned to Florida to continue his conspiratorial acts after establishing businesses and bank accounts in Minnesota. The government, however, did not dispute that Pierre returned to Florida or that information used to submit the Minnesota tax returns was found in Pierre's Florida home. The district court simply determined that those facts did not show that the two indictments charged the same conspiracy, and we agree. Pierre's motion requesting a hearing adverted only to developing "[t]his fact"—i.e., that "Pierre returned to Florida to continue to scheme," R. Doc. 132, at 3—and did not cite other facts that would be developed at a hearing.

For the foregoing reasons, the district court's order denying Pierre's motion to dismiss is affirmed.

_____