# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2797
_____

United States of America,

*Plaintiff - Appellee*,

v.

Frantz Pierre,

*Defendant - Appellant*.

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: February 10, 2017
Filed: September 1, 2017

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Frantz Pierre appeals his convictions for conspiracy to defraud the government and money laundering, asserting that the district court[1] erred by denying his motions to suppress evidence and to dismiss the charges. He also argues that the district court

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

committed procedural error in calculating an advisory sentencing guideline range before imposing sentence. We conclude that there was no reversible error, and we therefore affirm.

I.

Pierre and three co-conspirators were charged with conspiracy to defraud the government and money laundering, in violation of 18 U.S.C. §§ 286 and 1957. The conspirators used stolen social security numbers to submit fraudulent tax returns and collect the refunds. Some of the victims were incarcerated in Florida when their social security numbers were used to submit the tax returns.

The scheme began around July 2010, when Pierre registered a phony tax-preparation business in Minnesota and opened bank accounts in the company's name. Pierre and his co-conspirators filed 98 fraudulent federal income-tax returns requesting nearly $800,000 in refunds through that company. The IRS processed many of the returns and deposited nearly $450,000 in the company's account.

Pierre then recruited co-conspirators to register more phony tax-preparation businesses and open corresponding bank accounts. Pierre and the co-conspirators submitted at least 770 tax returns requesting more than $5.2 million in refunds. The IRS processed over 200 of these returns and paid more than $1.2 million before the fraud was discovered. Pierre and his co-conspirators were indicted in Minnesota in May 2013.

Eight months earlier, Pierre and another set of co-conspirators were charged with a similar tax conspiracy in the Southern District of Florida. In this scheme, Pierre and his Florida co-conspirators agreed to use stolen social security numbers to file fraudulent tax returns, direct the IRS to deposit the tax refunds onto debit cards, and then withdraw the refunds. The Florida indictment charged Pierre and his co-

conspirators with conspiracy to defraud the United States, use of unauthorized access devices (*i.e.*, debit cards) and conspiracy to use them, and aggravated identity theft. The indictment also charged Pierre with possession of fifteen or more unauthorized access devices (*i.e.*, social security numbers). The jury convicted Pierre on all counts, and the Florida district court sentenced him to 208 months in prison. *United States v. Pierre*, 825 F.3d 1183, 1191 (11th Cir. 2016).

After Pierre was charged in Minnesota, he moved to suppress certain bank records and to dismiss the conspiracy charge. Pierre argued that the government violated the Fourth Amendment and the Right to Financial Privacy Act when it obtained Pierre's bank records via grand jury subpoenas. The district court denied the motion on the grounds that Pierre lacked standing to bring the Fourth Amendment challenge and that the Right to Financial Privacy Act does not authorize the suppression of evidence.

In his motion to dismiss the conspiracy count, Pierre claimed that the Double Jeopardy Clause prevented the prosecution in Minnesota, because the Minnesota and Florida conspiracies were actually a single conspiracy for which he had already been prosecuted in Florida. After the district court denied Pierre's motion, Pierre brought an interlocutory appeal. This court affirmed, concluding that the government had shown by a preponderance of the evidence that the two indictments charged separate conspiracies. *United States v. Pierre*, 795 F.3d 847, 852 (8th Cir. 2015).

Pierre then pleaded guilty to both counts of the Minnesota indictment. Pierre proceeded *pro se* and renewed the motion to dismiss on the double-jeopardy ground. He argued that excerpts from government filings in the Minnesota and Florida cases after the first appeal demonstrated that the two indictments charged a single conspiracy. The district court denied Pierre's renewed motion.

At sentencing, the district court calculated a total offense level of 33 under the sentencing guidelines. That total offense level included a two-level increase for a vulnerable victim, a two-level increase for sophisticated means, a two-level increase for an offense involving ten or more victims, an 18-level increase for an intended loss of more than $5.2 million, and a four-level increase for an aggravating role in the offense. With a criminal history category of IV, Pierre's advisory guideline range was 188 to 235 months' imprisonment. The court sentenced Pierre to 210 months' imprisonment, with all but 36 months to run concurrently with the Florida sentence.

## II.

Pierre argues first that the district court erred by denying his motion to suppress his financial records, and by denying his motion to dismiss the indictment on double-jeopardy grounds. A valid guilty plea, however, waives all suppression issues not expressly reserved by a conditional plea, *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010), and waives a defendant's "independent claims relating to the deprivation of constitutional rights that occurred prior to" pleading guilty, *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). This waiver covers Pierre's claim for suppression of evidence based on the statute or the Constitution.

The valid guilty plea also bars an appeal based on double jeopardy, unless "the face of the record" at the time the plea was entered shows that the district court did not have the power to enter the second conviction or to impose sentence. *United States v. Broce*, 488 U.S. 563, 569, 575-76 (1989). The indictment in the Minnesota case describes on its face a conspiracy that is separate from the conspiracy in Florida. *United States v. Pierre*, 795 F.3d 847, 849-52 (8th Cir. 2015). Pierre also relies on statements made by the government in court documents filed after the first appeal. Assuming that Pierre did not waive reliance on materials other than the indictments

by pleading guilty, *cf. United States v. Quinones*, 906 F.2d 924, 927 (2d Cir. 1990), these court documents do not establish a violation of double jeopardy.

Pierre first cites a sentence from government's briefs in his Eleventh Circuit appeal stating that the "overall scheme" spanned at least from 2010 to 2012, and was moved to Minnesota after it was uncovered in south Florida. The phrasing is imprecise, but it is not inconsistent with the existence of two separate conspiracies that constituted what the government attorney called the "overall scheme." The brief's reference to the period "from 2010 to 2012" does not say that both conspiracies were underway during that entire period.

Pierre also points to two comments from the government's sentencing brief concerning one of Pierre's Minnesota co-defendants. In the first, the government remarked that the co-defendant participated in a "large, multi-state tax fraud scheme." The reference to multiple States is not inconsistent with a separate conspiracy charged in Minnesota; that offense involved some actions (such as filing of tax returns) that were taken in Florida. *See Pierre*, 795 F.3d at 851. Pierre also cites the government's references to "Pierre and a group of Miami-based co-conspirators" illegally obtaining social security numbers, and "Pierre and other co-conspirators" using those numbers to prepare and file fraudulent tax returns. This discussion is not inconsistent with the government's theory of separate conspiracies: Pierre and his Florida-based co-conspirators acquired the social security numbers, while Pierre and his Minnesota-based co-conspirators used the numbers to file fraudulent tax returns by opening phony tax-preparation businesses and bank accounts in Minnesota.

The face of the record does not show that Pierre's prosecution in Minnesota placed him in jeopardy for the same offense twice. His double-jeopardy claim therefore fails or is barred by his guilty plea.

III.

Pierre also raises five challenges to his sentence. We review the district court's interpretation and application of the guidelines *de novo* and its factual findings for clear error. *United States v. Petruk*, 836 F.3d 974, 976 (8th Cir. 2016).

First, Pierre argues that the district court erred when it applied an increase for a vulnerable victim. USSG § 3A1.1(b)(1) calls for a two-level increase if the defendant knew or should have known that a victim of the offense was a vulnerable victim. A vulnerable victim includes a person who is "otherwise particularly susceptible to the criminal conduct." USSG § 3A1.1, comment. (n.2).

The district court did not clearly err when it found that Pierre's incarcerated victims were vulnerable. The evidence supported a finding that Pierre knew or should have known that incarceration made them particularly susceptible to others using their identities to procure fraudulent tax refunds. Pierre complains that a vulnerable victim is a "person," USSG § 3A1.1, comment. (n.2), while incarcerated victims are a "class of persons," and he argues that the increase was thus unwarranted. But that the same circumstance made all incarcerated victims vulnerable does not make the adjustment inapplicable. Pierre also points out that not *all* of the victims were incarcerated, but the increase applies as long as one or more victims was vulnerable. *United States v. Anderson*, 440 F.3d 1013, 1017 (8th Cir. 2006).

Pierre also objects that the court applied both a vulnerable-victim adjustment and an increase for use of sophisticated means under § 2B1.1(b)(10)(C). The guidelines do not forbid the court to apply both enhancements. The former was based on Pierre targeting vulnerable inmates; the latter applied because Pierre carried out his scheme by creating fictitious companies and bank accounts to fool the IRS into

-6-

believing the co-conspirators were receiving legitimate tax refunds on behalf of customers. *See* USSG § 2B1.1, comment. (n.9(B)). And any error was harmless, because the court specifically found that even if the vulnerable-victim increase did not apply, the court would have imposed the same sentence based on the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Thigpen*, 848 F.3d 841, 844 (8th Cir. 2017).

Pierre's four remaining sentencing arguments are based on his theory that his Minnesota sentence inappropriately punished conduct that was already taken into account in his Florida sentence. Pierre contends that the Minnesota district court impermissibly double-counted when it imposed a two-level increase for ten or more victims, *see* USSG § 2B1.1(b)(2)(A), and when it imposed an 18-level increase for intended loss based on the 770-plus social security numbers used to file the fraudulent tax returns through Minnesota companies, *see* USSG § 2B1.1(b)(1)(J). According to Pierre, because the Florida district court included $1 million in loss for Pierre's illegal possession of 2,000 social security numbers when calculating his offense level, the Minnesota district court was precluded from sentencing Pierre based on his use of more than 770 of those social security numbers as part of the Minnesota conspiracy. We reject this contention because Pierre's sentences in the two jurisdictions reflect enhancements for separate crimes: the Florida court enhanced his sentence for illegally *possessing* the 2,000 or more social security numbers, while the Minnesota court enhanced his sentence based on the intended loss and the ten or more victims from Pierre illegally *using* more than 770 of the numbers to file fraudulent tax returns.

Pierre also complains that the district court created unwarranted sentencing disparities when it sentenced him based on intended loss ($5.2 million) rather than actual loss ($1.2 million), because his co-conspirators received sentences based on the actual loss amount attributable to them. The guidelines direct the court to consider the greater of actual loss or intended loss, USSG § 2B1.1, comment.

(n.3(A)), so there was no error in using the larger amount. The statutory direction to avoid unwarranted disparities among defendants, 18 U.S.C. § 3553(a)(6), refers to national disparities, not differences among co-conspirators, so Pierre's argument founders on a mistaken premise. *See United States v. Fry*, 792 F.3d 884, 892-93 (8th Cir. 2015). In any event, any disparity among co-conspirators here was warranted by Pierre's greater culpability in the conspiracy. Pierre was aware of the full scope of the conspiracy: he recruited co-conspirators to open several phony tax-preparation companies and bank accounts, and he directed them to deposit and withdraw money from the bank accounts. Most of the co-conspirators were associated with only a single fictitious company and bank account. The district court reasonably sentenced Pierre based on a greater amount of loss.

Finally, Pierre argues that his entire sentence in the Minnesota case should have run concurrently with the remainder of his undischarged term of imprisonment in the Florida case. He relies on USSG § 5G1.3(b), which says that if the Florida sentence resulted from an offense that is "relevant conduct" to the Minnesota offense, then the terms of imprisonment should run concurrently. As it pertains to Pierre's convictions, relevant conduct includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." USSG §§ 1B1.3(a)(2), 3D1.2(d).

The probation office recommended that § 5G1.3(b) was not applicable, because the Florida offense conduct was not relevant conduct in the Minnesota conspiracy. The presentence report observed that the Florida case did not include the losses in the Minnesota case or the money laundering conduct and that the two conspiracies did not occur in the same time frame. The district court adopted the presentence report. At the hearing, the district court stated that the sentence was "consistent with the § 3553(a) factors, provided that I break that down and direct that all but 36 months of it be run concurrent with the Florida sentence."

The district court did not clearly err in finding that at least some of Pierre's conduct in the Florida case was not relevant conduct to the Minnesota conspiracy. In any event, the court was not bound to follow the recommendation of § 5G1.3, and the court made clear that its decision to run 36 months of the term consecutively to the Florida sentence was based on § 3553(a). Given the separate harm arising from the Minnesota conspiracy, this decision was not an abuse of discretion.

\* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.

KELLY, Circuit Judge, concurring.

Our court has not previously decided whether "[t]he statutory direction to avoid unwarranted disparities among defendants [in accordance with] 18 U.S.C. § 3553(a)(6) refers to national disparities [rather than] differences among co-conspirators." Supra at 8. See Fry, 792 F.3d at 892–93 (noting in dicta that "[m]ost courts say that the statutory direction to avoid unwarranted sentence disparities, see 18 U.S.C. § 3553(a)(6), refers to national disparities, not differences among co-conspirators" but affirming defendant's longer sentence as substantively reasonable when compared to sentences of other participants in fraud scheme because "disparate sentences among dissimilar defendants are not unwarranted") (emphasis omitted); United States v. Nshanian, 821 F.3d 1013, 1019 (8th Cir. 2016) (citing Fry, 792 F.3d at 892, but nonetheless "[a]ssuming for the sake of analysis that the statutory direction to avoid unwarranted sentence disparities might refer to differences among co-conspirators rather than national disparities"); United States v. Avalos, 817 F.3d 597, 602 (8th Cir. 2016) (citing Fry, 792 F.3d at 892–93, but "assuming for the sake of analysis that sentence disparities among co-conspirators could demonstrate unreasonableness"). In my view, there is no need to do so here, because any disparity

-9-

between Pierre's sentence and those of his co-conspirators was warranted for the reasons stated by the court. For this reason, I concur in the result, but not in the conclusion regarding the proper scope of § 3553(a)(6). I otherwise concur in the court's opinion.

———————————————