# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2431
_____

United States of America,

*Plaintiff - Appellee,*

v.

Donavan Jay White Owl, also known as DJ,

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: October 17, 2023
Filed: February 23, 2024
_____

Before SMITH, Chief Judge, LOKEN and COLLOTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Donovan White Owl appeals an order of the district court[*] denying his motion to dismiss an indictment based on the Double Jeopardy Clause. In a pending criminal

_____

[*]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

case, the district court declared a mistrial after a jury was seated and jeopardy attached. White Owl maintains that a new trial would impermissibly place him in jeopardy twice for the same offense. He unsuccessfully moved to dismiss the indictment on that basis, and we have jurisdiction over an appeal of the district court's order denying the motion. *Abney v. United States*, 431 U.S. 651, 662 (1977). We conclude that White Owl impliedly consented to the mistrial, and that a new trial is therefore not forbidden by the Constitution.

I.

White Owl is under indictment for felony murder and arson within Indian Country. *See* 18 U.S.C. §§ 2, 81, 1111, 1153. Trial commenced on March 14, 2023, but the district court declared a mistrial on March 22 after a dispute over White Owl's access to information about a prosecution witness.

The government intended to call as a witness a fellow detainee of White Owl's to testify that White Owl admitted setting the fire at issue in the case. Before the witness was called, defense counsel told the court that he was missing some materials that might be used to impeach the witness. The district court then ruled that the witness could not testify at trial "until and unless [defense counsel was] provided with each and every one of those documents and provided sufficient time to review them."

White Owl later renewed a motion to exclude the fellow detainee's testimony. The district court granted the motion on the ground that the government's non-disclosure of certain material violated White Owl's rights under the Due Process Clause. *See Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963). The court cited information known to the prosecutor handling the witness's criminal case that was not disclosed to the defense by the prosecutors in White Owl's case: "It was a situation where the right hand didn't know what the left hand was doing."

Later the same day, however, the district court reconsidered. The court decided that "the United States should have a full opportunity to present their case," but that "defense counsel also needs sufficient time to prepare himself for trial" and to perform any additional research or work regarding the history of the witness. The court determined that the "harsh remedy" of excluding the witness's testimony was not warranted, and decided instead to declare a mistrial. But before declaring the mistrial, the district court requested the views of the parties. The government informed the court that it would still call the fellow detainee as a witness and proposed a continuance of several days that would allow defense counsel to prepare further.

The court then requested defense counsel's position on the matter. Defense counsel did not speak directly to the question of a mistrial, but discussed his desire to review certain discovery material, including material that had been available to the defense all along. The court asked why counsel had not reviewed the material before trial, and counsel replied that he "simply didn't have time." When the court asked defense counsel how long he needed to prepare, counsel said he did not know, but that it would be a matter of days, not merely "an hour." The court asked whether it would be days or weeks, and counsel replied as follows:

> I think it's closer to weeks, Your Honor. I don't have the resources at my disposal of having an investigator that can run – I don't have co-counsel here. I have my paralegal. I'm not rigged for that right now. I have to set up – probably put together another team to work on that. I don't have another investigator at my disposal. And I don't think I have a schedule that's going to lend itself well to doing that when I'd have to put everything else on hold to make it happen. It's going to take a bit, like a week, maybe more. I just don't know what's there. Listening to that proffer – and then I'd want to go back and actually be able to have a recording of that I could use, and I agree not to disclose it or any of the things I learn from it. There's a lot to unwrap with [the witness].

The court then explained that in light of the delay that would be required to accommodate defense counsel, the court was "unwilling to maintain this jury and grant a brief continuance." The court determined that "a manifest necessity exists to grant a mistrial" in the case: "The United States needs to be able to present its case including [the fellow detainee], warts and all, but defense counsel needs to prepare himself for trial including a thorough examination and cross-examination of [the witness] and his record of veracity." The court asked defense counsel whether there was "anything else," and counsel said, "No, your Honor." The court discharged the jury and again asked whether there was anything further from the defense. Counsel again said, "No, your Honor."

The district court scheduled a new trial for June 2023. At the pretrial conference, fifteen days before trial, White Owl raised no objection to the new trial. Three days later, however, White Owl moved to dismiss the indictment based on the Double Jeopardy Clause.

The district court denied the motion. The court determined that White Owl's failure to object to the declaration of a mistrial defeated his claim of double jeopardy. The court also reiterated its conclusion that manifest necessity justified a mistrial. The court explained that "White Owl's counsel was the initiating force who requested time to evaluate newly disclosed impeachment evidence," and declared that the court would "not now succumb to this new delay tactic." We review the district court's legal conclusion *de novo*. *United States v. Pierre*, 795 F.3d 847, 850 (8th Cir. 2015).

II.

The Double Jeopardy Clause ordinarily prevents multiple prosecutions for the same offense. *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). When a trial is terminated over the objection of a defendant, the Double Jeopardy Clause bars a new trial unless "manifest necessity" required the mistrial. *Id.* at 672. But where a

-4-

mistrial is declared "at the behest of the defendant," different principles come into play. *Id.* When a defendant consents to a mistrial, "double jeopardy is not implicated unless the conduct giving rise to the mistrial was intended to provoke the defendant to move for a mistrial." *United States v. Ford*, 17 F.3d 1100, 1102 (8th Cir. 1994). White Owl argues that he did not consent to the mistrial and that no "manifest necessity" supported the district court's action.

In *Ford*, we held that a defendant consented to a mistrial where he "first stated that he did not want a mistrial, but immediately changed his mind and requested a mistrial." *Id.* The record in this case does not include an affirmative request for mistrial by the defendant, but we do not think the rule allowing a new trial should be limited to cases of express consent. The law commonly recognizes that consent may be manifested in various ways, and gives effect to consent that is either express or implied. *E.g.*, *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023) (plurality opinion); *Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1327 (2020); *Birchfield v. North Dakota*, 579 U.S. 438, 476 (2016); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 685 (2015); *Ortiz v. Jordan*, 562 U.S. 180, 191 n.7 (2011) (quoting Fed. R. Civ. P. 15(b)); *Roell v. Withrow*, 538 U.S. 580, 589-90 (2003).

We see no reason why the rule should be different in the context of double jeopardy. To take one stark example, "[i]f a judge should say: 'I think a mistrial would be a good idea, but think this over and let me know if you disagree', the defendant's silence would be assent." *United States v. Buljubasic*, 808 F.2d 1260, 1265-66 (7th Cir. 1987). We thus agree with other circuits that a district court may convene a new trial after a mistrial where the defendant impliedly consents to the mistrial. *United States v. Gantley*, 172 F.3d 422, 428 (6th Cir. 1999); *Love v. Morton*, 112 F.3d 131, 138 (3d Cir. 1997); *Earnest v. Dorsey*, 87 F.3d 1123, 1129 (10th Cir. 1996); *United States v. Ham*, 58 F.3d 78, 83 (4th Cir. 1995); *United States v. Nichols*, 977 F.2d 972, 974 (5th Cir. 1992); *United States v. DiPietro*, 936 F.2d 6, 9-10 (1st Cir. 1991); *Buljubasic*, 808 F.2d at 1265-66; *United States v. Puleo*, 817 F.2d 702,

705 (11th Cir. 1987); *United States v. Smith*, 621 F.2d 350, 351-52 (9th Cir. 1980); *United States v. Goldstein*, 479 F.2d 1061, 1067 (2d Cir. 1973).

Whether a party has impliedly consented is a fact-specific inquiry under the totality of the circumstances. When viewed in context, White Owl's responses to inquiries from the court demonstrated his implied consent to a mistrial in this case. The district court stated its intention to declare a mistrial and asked the parties for their views. The government suggested a continuance of several days to avoid a mistrial. White Owl had a clear opportunity to object to a mistrial, but he instead emphasized the need for more time and resources to prepare for cross-examination of a prosecution witness. When asked how much time he required, White Owl responded that it would be closer to weeks than days. Where the court was seeking to discern whether a short continuance without mistrial was a feasible course, White Owl's insistence that more time was required was an implied consent to the court's proposal of a mistrial. The court asked the parties for further views before the jury was discharged, but White Owl still raised no objection to the court's proposal. The colloquy and non-objection amounted to assent.

White Owl maintains that because the district court referred to the manifest necessity standard when reciting the reasons for a mistrial, he reasonably understood that the court knew of an unstated objection by the defense. The court, however, is always at liberty to state an alternative basis for a ruling. White Owl did not object to the court's proposed mistrial and implicitly consented to a mistrial by insisting that a continuance of several days would be insufficient for his needs. The court could have rested its order on that circumstance alone, but proceeded to state its view that manifest necessity justified a mistrial. White Owl already had implied to the court that he would accept a mistrial, and his contention that the court thereafter lulled him into foregoing an objection is unpersuasive.

The order of the district court is affirmed.

_____

-6-