# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-3275

_____

United States of America

*Plaintiff - Appellee*

v.

Gilbert Lee Ellis

*Defendant - Appellant*

_____

No. 23-3276

_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Jerome Ellis

*Defendant - Appellant*

_____

No. 24-1133

_____

United States of America

*Plaintiff - Appellee*

v.

Joshua Adam Townsen

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: January 16, 2025
Filed: February 25, 2025

_____

Before LOKEN, SHEPHERD, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Gilbert Ellis, Christopher Ellis, and Joshua Townsen conspired to distribute methamphetamine and heroin. All three pled guilty and now raise various challenges to their sentences. Having jurisdiction under 28 U.S.C. § 1291, we affirm the judgments of the district court.[1]

I.

In the summer of 2021, the Southeast Iowa Narcotics Task Force (SEINT), received several tips regarding the distribution of heroin in Burlington, Iowa. Based on these tips and additional information from a confidential informant, SEINT obtained a warrant to search Michael "Mikey" Brown's home, where detectives discovered marijuana and "packaging material consistent with narcotics distribution."

_____

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

In July 2022, Burlington police officers interviewed another confidential source who confirmed Brown's drug involvement and alerted officers to the participation of Gilbert,[2] who is a wheelchair user. This source told officers that he purchased heroin from Gilbert daily, and, if he could not obtain any from Gilbert, he would purchase the drugs from Brown. After receiving this information, SEINT detectives set up a controlled purchase of heroin from Brown in August 2022. While surveilling this transaction, detectives observed Gilbert drive Brown to the transaction in a vehicle registered to Gilbert's girlfriend.

In September 2022, SEINT developed another confidential source, K.H., whose testimony was incorporated into the record at sentencing. K.H. testified that he was involved in three controlled buys from Gilbert in 2022 and had consistently purchased cocaine and heroin from Gilbert for years. In one controlled buy, Gilbert told K.H. to meet him at a middle school to purchase heroin. When K.H. arrived, he found that Gilbert had sent Christopher to deliver the drugs and complete the transaction. K.H. also testified that all of his drug transactions were "arranged through Gilbert" or that "Gilbert would be involved" even if he was not physically present for the exchange.

A week after the controlled buy at the middle school, officers conducted a traffic stop of a vehicle driven by Theodis Bagby with Brown in the passenger seat. A canine alerted on the vehicle, and officers discovered 1,109.8 grams of pure, ice methamphetamine in the backseat. Bagby told officers that the vehicle was rented by his nephew, Gilbert, and that Gilbert had instructed him to take the vehicle and pick up Brown.

In October 2022, another controlled buy occurred, this time involving Townsen. Before traveling to meet a confidential informant and complete the transaction, Gilbert met with Townsen at a residence. Upon Gilbert's arrival,

---

[2]For purposes of clarity, this opinion will refer to Gilbert and Christopher by their first names.

Townsen exited the residence with a black bag containing pure methamphetamine for the buy, which he had procured for Gilbert.

Gilbert, Christopher, Brown, Bagby, and Townsen were indicted in January 2023 and each charged with one count of conspiracy to distribute 50 grams or more of actual methamphetamine and 100 grams or more of a mixture or substance containing heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)-(C), and 846. Gilbert was also charged with one count of distribution of heroin near a school, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 860; two counts of distribution of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and two counts of distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Christopher was charged with one additional count of distributing heroin near a school, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 860. Finally, Townsen was charged with one additional count of distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

Gilbert pled guilty without a plea agreement to all six counts of heroin and methamphetamine distribution and conspiracy. Gilbert's Presentence Investigation Report (PSR) recommended applying the "manager or supervisor" enhancement under United States Sentencing Guideline (USSG) § 3B1.1(b) because of his leadership role within the conspiracy. At sentencing, Gilbert objected to this enhancement, arguing that he played the same role as his co-conspirators and merely directed others because he was wheelchair-bound. The district court found that Gilbert directed others to distribute multiple quantities of controlled substances and that his use of a wheelchair did not "change the fact" that he still ordered others to carry out the distribution scheme. The district court granted a downward variance and sentenced Gilbert to 240 months' imprisonment and 5 years' supervised release.

Brown, who is not a party to this appeal, pled guilty without a plea agreement. At sentencing, the district court calculated his Guidelines range as 210-262 months' imprisonment but varied downward and imposed a sentence of 150 months'

-4-

imprisonment followed by 6 years' supervised release. Bagby, also not a party to this appeal, proceeded to a jury trial, where he was acquitted.

Christopher pled guilty pursuant to a plea agreement. His PSR recommended a total offense level of 34, which reflected classification as a career offender under USSG §§ 4B1.1(a) and (b)(1) based on two prior felonies for a crime of violence or a controlled substance offense. Relevant here, one of the felonies was a 2017 conviction for possession with intent to deliver marijuana in violation of Iowa Code § 124.401(1)(d). Christopher objected to the classification of this conviction as a controlled substance offense at sentencing, but the district court overruled the objection. The district court calculated his Guidelines range as 262 to 327 months' imprisonment but varied downward, ultimately imposing a sentence of 200 months' imprisonment and 5 years' supervised release.

Townsen also pled guilty pursuant to a plea agreement, and his PSR deemed him ineligible for safety-valve relief based on a 2016 burglary conviction. See 18 U.S.C. § 3553(f). Townsen challenged his ineligibility for safety-valve relief under this Court's now-affirmed decision of United States v. Pulsifer, 39 F.4th 1018 (8th Cir. 2022), aff'd, 601 U.S. 124 (2024). The district court relied on Pulsifer and overruled the objection, calculating Townsen's Guidelines range as 120 to 135 months' imprisonment and sentencing him to the mandatory minimum of 120 months' imprisonment and 5 years' supervised release. Gilbert, Christopher, and Townsen now appeal.

II.

Gilbert raises several challenges to his sentence. "We review a district court's sentence in two steps: first, we review for significant procedural error; and second, if there is no significant procedural error, we review for substantive reasonableness." United States v. Kistler, 70 F.4th 450, 452 (8th Cir. 2023) (citation omitted). "When we review the imposition of sentences, whether inside or outside

the Guidelines range, we apply 'a deferential abuse-of-discretion standard.'" United States v. Hayes, 518 F.3d 989, 995 (8th Cir. 2008) (citation omitted).

A.

Gilbert first challenges the application of USSG § 3B1.1(b) to his sentence. "The district court's determination of a participant's role in the offense is a factual finding that we review for clear error." United States v. Ayers, 138 F.3d 360, 364 (8th Cir. 1998). USSG § 3B1.1(b) provides a three-level enhancement if (1) "the defendant was a manager or supervisor (but not an organizer or leader)," and (2) "the criminal activity involved five or more participants or was otherwise extensive." "The government bears the burden of proving by a preponderance of the evidence that the aggravating role enhancement is warranted." United States v. Gaines, 639 F.3d 423, 427 (8th Cir. 2011). Under the Guidelines, we construe the terms "manager" and "supervisor" broadly. United States v. Cole, 657 F.3d 685, 687 (8th Cir. 2011) (per curiam). "To determine whether this enhancement applies, the sentencing court considers factors such as the 'exercise of decision[-]making authority, the nature of participation in the commission of the offense, . . . the nature and scope of the illegal activity, and the degree of control and authority exercised over others.'" United States v. Alcalde, 818 F.3d 791, 794 (8th Cir. 2016) (quoting USSG § 3B1.1 cmt. n.4). Notably, "[t]he enhancement may apply even if a defendant managed or supervised only one person in a single transaction." United States v. Reyes-Ramirez, 916 F.3d 1146, 1148 (8th Cir. 2019).

We discern no clear error in the district court's factual finding that Gilbert "was a manager or supervisor" of several drug transactions. See USSG § 3B1.1(b). The testimony of informant K.H. revealed that Gilbert would sometimes have co-conspirators deliver drugs for him. If K.H. was purchasing drugs, the transaction would be "arranged through Gilbert" or controlled by him. Gilbert even acknowledges on appeal several instances in which he directed and controlled drug transactions. Moreover, Gilbert does not contest the accuracy of the exhibits or the proven factual scenarios—he merely argues that, because he is wheelchair-bound,

-6-

he "obviously" must rely upon others to do his bidding if significant movement is involved. Appellant Br. 22. K.H.'s testimony alone is enough to support the application of § 3B1.1(b)—K.H. confirmed that Gilbert controlled all of the transactions that K.H. was involved in and that Gilbert directed co-conspirators to deliver drugs on his behalf to K.H. on more than one occasion. "A fair inference from the evidence presented" is that Gilbert supervised his co-conspirators by coordinating the delivery of methamphetamine and instructing them on "where to meet his customers and how much to collect from them." See United States v. Moore, 798 F. App'x 952, 959 (8th Cir. 2020) (per curiam); see also Reyes-Ramierez, 916 F.3d at 1148 (applying enhancement when defendant "provided courier . . . instructions and logistical support"). The district court did not clearly err in determining that Gilbert was a manager or supervisor under USSG § 3B1.1(b).

Gilbert next asserts that his sentence was procedurally flawed because the district court attributed to him the drugs found during the traffic stop involving Bagby and Brown, adding 1,109.8 grams of pure methamphetamine to his calculated drug weight. Ordinarily, we review "[d]rug quantity determinations . . . for clear error," Alcalde, 818 F.3d at 794, but Gilbert did not object to these facts before the district court. Thus, we review for plain error. See United States v. Escobar, 909 F.3d 228, 245 (8th Cir. 2018). Under Federal Rule of Criminal Procedure 52(b), "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." To prevail, Gilbert must demonstrate (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 732 (1993).

Gilbert cannot demonstrate any plain error. The district court "may accept any undisputed portion of the presentence report as a finding of fact," Fed. R. Crim. P. 32(i)(3)(A), and Gilbert "did not object to the drug quantity listed in the PSR, [either] prior to [or] at sentencing. By admitting to the drug quantity, [Gilbert] cannot now on appeal assert that the district court erred by accepting an admitted fact." See Escobar, 909 F.3d at 245. While Gilbert did object to several other

allegations in the PSR, he failed to object to this one.  Thus, Gilbert's sentence was not procedurally flawed, and the district court did not plainly err by allocating the drugs discovered during the admitted traffic stop to Gilbert.

B.

Gilbert next argues that his sentence was substantively unreasonable.  He argues he should have received a shorter sentence based on (1) his policy disagreement with the Guidelines' treatment of pure methamphetamine and (2) his co-conspirator receiving a shorter sentence.  Gilbert's sentence was within Guidelines range, so it is presumptively reasonable.  See id. at 241 ("We may presume a within-Guidelines sentence is reasonable.").

Gilbert first argues that his sentence was substantively unreasonable based on the classification of the methamphetamine purity.  Gilbert had a total of 1,477.85 grams of pure methamphetamine and 2,268 grams of mixed methamphetamine attributed to him throughout the conspiracy, resulting in a total converted drug weight of 29,557 kilograms for the pure methamphetamine and 4,536 kilograms for the mixed methamphetamine under the Guidelines.  See USSG § 2D1.1 cmt. 8(D) (Drug Conversion Tables).  At sentencing, Gilbert questioned the "justification" for differentiating mixed and pure methamphetamine, making a policy argument that the court should vary downward on this basis.  This Court, however, "ha[s] frequently stated that while a district court may vary from the Guidelines based on a policy disagreement, it is not required to do so." United States v. Noriega, 35 F.4th 643, 652 (8th Cir. 2022).  While Gilbert may disagree, his sentence was not substantively unreasonable based on the district court "declining to vary downward based on his policy disagreement with the Guidelines' treatment of a mixture of methamphetamine as opposed to pure methamphetamine." See id.

Gilbert's argument as to the treatment of his co-conspirator, Michael Brown, is likewise without merit.  Brown received a sentence of 150 months' imprisonment, a downward variance from the district court's calculated Guidelines' range of  210

to 262 months' imprisonment. Gilbert received 240 months' imprisonment, which was a downward variance from his Guidelines range of 262 to 327 months' imprisonment. But "[t]he statutory direction to avoid unwarranted disparities among defendants, 18 U.S.C. § 3553(a)(6), refers to national disparities, not differences among co-conspirators, so [Gilbert's] argument founders on a mistaken premise." United States v. Pierre, 870 F.3d 845, 850 (8th Cir. 2017). Even so, "any disparity among co-conspirators here was warranted by [Gilbert's] greater culpability in the conspiracy." Id. Gilbert supervised other co-conspirators and received a role enhancement for doing so; Brown received no such enhancement. Additionally, Brown pled guilty to only one drug conspiracy count, while Gilbert pled guilty to six different trafficking, conspiracy, and distribution counts. "[I]t is not an abuse of discretion to impose a sentence that results in disparity between co-defendants where there are legitimate distinctions between" the two. United States v. Jones, 612 F.3d 1040, 1045 (8th Cir. 2010). Thus, the district court did not abuse its discretion by sentencing Gilbert to 240 months' imprisonment.

III.

Christopher challenges the imposition of the career-offender sentencing enhancement, USSG § 4B1.1(a). He argues that his 2017 conviction of possession with intent to deliver marijuana under Iowa Code § 124.401(1)(d) does not qualify as a controlled substance offense, and, therefore, he did not have the requisite number of felonies required to impose the enhancement. "[W]e review de novo whether a prior conviction qualifies as a crime of violence or controlled substance offense under the Guidelines." United States v. Williams, 926 F.3d 966, 969 (8th Cir. 2019).

The career-offender enhancement applies to defendants who are convicted of a felony crime of violence or controlled substance offense and have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a). A controlled substance offense is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year,

that . . . prohibits the . . . distribution, or . . . possession of a controlled substance." USSG § 4B1.2(b)(1). Christopher has two prior state court felonies: a 2015 conviction for delivery of a controlled substance under Iowa Code § 124.401(1)(c)(3) and a 2017 conviction for possession of marijuana with intent to deliver under Iowa Code § 124.401(1)(d). In his view, his marijuana conviction should not count towards the requisite number of felonies because the Iowa definition of marijuana in 2017 did not align with the federal definition of marijuana at the time of Christopher's offense, and, therefore, was not a controlled substance offense under the Controlled Substances Act (CSA). See 21 U.S.C. § 812.

In United States v. Henderson, applying a categorical approach, this Court held that, under the Guidelines, "[t]here is no requirement that the particular substance underlying the state offense [must] also [be] controlled under a distinct federal law" to warrant the imposition of the career-offender enhancement. 11 F.4th 713, 718 (8th Cir. 2021). "There is no cross-reference to the [CSA] in § 4B1.2(b)," and "[t]he career-offender guideline defines the term controlled substance offense broadly." Id. (citation omitted). Thus, a "controlled substance" under § 4.B1.2(b) includes "*any type of drug* whose manufacture, possession, and use is *regulated by law*," even if the state law is broader than the federal definition. Id. (quoting United States v. Ward, 972 F.3d 364, 370 (4th Cir. 2020)).

Accordingly, Christopher's argument is foreclosed by Henderson. His 2017 conviction qualifies as a controlled substance offense because, at the time of the offense, Iowa regulated the possession of marijuana. See United States v. Bailey, 37 F.4th 467, 469 (8th Cir. 2022) (per curiam) ("[Defendant's] uncontested prior marijuana convictions under the hemp-inclusive version of Iowa Code § 124.401(1)(d) categorically qualif[y] as controlled substance offenses for the career[-]offender enhancement." (quoting United States v. Jackson, No. 20-3684, 2022 WL 303231, at *2 (8th Cir. Feb. 2, 2022))). And because Henderson itself applied the categorical approach, we disagree with Christopher's argument that Henderson is inconsistent with prior precedent such that we are free to disregard it.

The district court did not err by imposing the career-offender enhancement at sentencing.

IV.

Finally, Townsen argues that he should have been eligible for safety-valve relief under 18 U.S.C. § 3553(f). To be eligible for safety-valve relief, a defendant must not have:

> (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
> (B) a prior 3-point offense, as determined under the sentencing guidelines; and
> (C) a prior 2-point violent offense, as determined under the sentencing guidelines.

18 U.S.C. § 3553(f)(1). Should a defendant be eligible for safety valve relief, the sentencing court is able to impose a sentence "without regard to any statutory minimum sentence." Id. § 3553(f). This appeal was filed before the Supreme Court's decision in Pulsifer v. United States, which held that "[a] defendant is eligible for safety-valve relief only if he satisfies each of [18 U.S.C. § 3553(f)(1)]'s three conditions." 601 U.S. 124, 153 (2024). As Townsen candidly acknowledges, his argument is foreclosed by Pulsifer. Appellant Br. 5. Townsen's 2016 burglary conviction is a 3-point offense under the Guidelines. Because the presence of *any* offense outlined in § 3553(f)(1) disqualifies an individual from safety-valve relief, the district court did not err by sentencing Townsen to the mandatory minimum sentence.

V.

For the foregoing reasons, we affirm the judgments of the district court.

_____